# UNITED STATES *v.* CORNELL STEAMBOAT COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 239. Argued April 20, 1906.—Decided May 14, 1906.

While a claim for salvage of Government property based on services rendered without request of any officer of the Government does not arise upon any contract, express or implied, it is properly one for unliquidated damages in a case not sounding in tort, in respect to which the claimant would be entitled to redress in the admiralty court if the United States were suable, and, under the Tucker Act, the Court of Claims, or the proper District Court where the claim is for less than $1,000, has jurisdiction of a suit therefor.

The successful salving of undelivered merchandise on which duties have been paid, but which the Secretary of the Treasury is authorized by §§ 2984, 3689, Rev. Stat., to refund if the goods were lost, entitles the salvors to recover from the Government a reasonable salvage, equal to that recovered on the private property saved at the same time, on the amount of duties which the Government would have been under obligation to refund had the merchandise been lost. In such a case it will be assumed that the duties will be refunded, and the claim therefor will be regarded as a liability, although § 2984 is permissive and not mandatory in form.

Although courts of admiralty have no general equity jurisdiction, and cannot afford equitable relief in a direct proceeding for that purpose, they may apply equitable principles to subjects within their jurisdiction.

This was a petition under what is known as the Tucker Act, defining the jurisdiction of the Court of Claims, to recover salvage upon the duties on 1,883 bags of sugar, cargo of the lighter Bangor.

The facts agreed upon and found by the court are substantially as follows:

The Steamboat Company, a New York corporation, and owner of the steam tug R. G. Townsend, at great risk and peril to the tug, saved a certain lot of 1,883 bags of sugar on board of a lighter called the Bangor, in the waters of the port

of New York, which was in danger of being destroyed by fire. The sugar had been imported from a foreign country, was subject to duty under the laws of the United States, and at the time of the fire had not been delivered to the consignees, and was still in the possession and control of the customs officers. The duties on this sugar amounting to $6,000 had been paid to the Government.

Petitioner filed a libel in the District Court against the cargo to recover salvage compensation for services rendered in saving the sugar. The case resulted in a decree awarding the petitioner salvage, amounting to ten per cent of the value of the property saved, viz., $1,274.03. 108 Fed. Rep. 277. In fixing this sum the District Court considered the invoice value of the sugar only, excluding salvage upon the duties saved to the United States by the salving services.

Upon these facts the District Court awarded the appellant ten per cent upon the amount of the duties saved to the United States, namely, $600, with clerk's fees, $3.60. 130 Fed. Rep. 480. The Circuit Court of Appeals affirmed this judgment, 137 Fed. Rep. 455, whereupon the United States applied for this writ of certiorari.

*Mr. J. C. McReynolds,* Assistant Attorney General, for the United States:

The District Court has no jurisdiction.

Unless granted by the Tucker Act the trial court was without authority to afford relief. Obviously the present controversy, if provided for at all, must be one arising out of contract, expressed or implied, or from damages, in respect to which respondent would be entitled to redress against the United States in a court of law, equity, or admiralty if suable as a private individual.

There was no contract, expressed or implied, between the Government and the respondent and no such thing is alleged in the petition. The services to the cargo were purely voluntary. The claim is not one in respect of which respondent

would be entitled to redress in a court of law, equity, or admiralty against a private individual. No recovery, either at law or in equity, is possible for purely voluntary services.

A proceeding in admiralty *in personam* against a private individual for salvage allowance is not permissible unless the service was performed "at his request and for his benefit," or unless in some way a proceeding *in rem* against the thing salved has become impossible—as, *e. g.*, by clandestine removal or destruction after delivery to the owner. Benefit, however great, from salving a cargo cannot support a claim *in personam* for the services rendered. Admiralty Rule 19; *The Sabine,* 101 U. S. 384, 389.

It follows that if the Government were subject to suit as an individual, respondent's claim for saving the cargo in question could not be enforced by a proceeding *in personam* against it.

Section 2984, Revised Statutes, specifies the sole method assented to by the Government for securing refund of duties paid upon merchandise afterwards destroyed. The courts have no jurisdiction of an original proceeding to enforce such a claim—whatever might be their power in a case where the Secretary should refuse to perform his duty.

The claim set up in the present proceeding must be regarded as under the revenue laws. Such claims are not within the jurisdiction of the courts, since those laws constitute a distinct and exclusive system of collection and redress. *Nichols* v. *United States,* 7 Wall. 122, 131; *D. M. Ferry & Co.* v. *United States,* 85 Fed. Rep. 550. See also *State Railroad Tax Cases,* 92 U. S. 614; *Auffmordt* v. *Hedden,* 137 U. S. 324; *Treat* v. *Staples,* 1 Holmes, 5; *S. C.,* 24 Fed. Cas. 14,162.

Upon the facts, respondent's claim is without merit. What respondent did was, purely voluntary and such services, however meritorious or beneficial, create no obligation enforceable against the beneficiary either in law or equity.

The maritime law, for the purposes of public policy, and for the advantage of trade and commerce, imposes in cases of

salvage a *jus in re*, a liability upon the thing saved—a liability which is a special consequence arising out of the character of mercantile enterprise, the nature of the sea perils, and the fact that the thing saved was saved under great stress and exceptional circumstances. Kennedy on Civil Salvage, 6; *Falcke* v. *Scottish Imperial Ins. Co.*, 34 Ch. Div. 234, 248; *The Blaireau*, 2 Cranch, 240, 265; *The Emblem*, 8 Fed. Cas. 4434.

Salvage is only spoken of in relation to ships and vessels and their cargoes, or those things which have been committed to, or lost in, the sea or its branches, or other public navigable waters, and have been found and rescued. *Cope* v. *Vallette Dry Dock Company*, 119 U. S. 625. The right does not arise on saving property of other kinds which may have been moored afloat, and have got adrift, such as a raft of timber, a buoy, or a floating dry dock. Carver's Carriage by Sea, 3d ed., § 322.

The foundation of the admirality jurisdiction in the awarding of salvage is the power of enforcing the maritime lien obtained on property saved by salvors. *The Cargo Ex. Schiller*, 2 L. R., P. D. 145, 149; *The Emblem*, 8 Fed. Cas. No. 4434; *The Independence*, 13 Fed. Cas. 7014; *The Sabine*, 101 U. S. 384.

Salving charges cannot be enforced for rescuing bills of exchange and other evidences of debt. *The Emblem*, 8 Fed. Cas. No. 4434. Salvage cannot be awarded for saving the United States mails because not subject to detention and sale. *The Merchant*, 17 Fed. Cas. No. 9435.

*Mr. R. D. Benedict* for respondent:

The United States Government is liable to pay salvage. In this the Government differs from an ordinary shipowner only in the form in which it must be sued, and in the fact that no attachment can be made of its vessel to which the service was rendered. But its liability to pay salvage—not compensation for work, labor and services, but salvage, with all that the word means—has been affirmed by the Supreme Court, by the

Court of Claims, by the Circuit Courts of Appeals for the Fourth and Second Circuits, by the Circuit Court for the District of Connecticut, and by the District Court for the Northern District of California, and has never been denied by any court. *The Davis*, 10 Wall. 15; *Gould* v. *United States*, 1 C. Cl. 184; *Bryan* v. *United States*, 6 C. Cl. 128; *McGowan* v. *United States*, 20 C. Cl. 147; *United States* v. *Morgan*, 99 Fed. Rep. 570; *Hartford & N. Y. Trans. Co.* v. *United States*, 138 Fed. Rep. 618; *Rees* v. *United States*, 134 Fed. Rep. 146.

The United States, in relation to the proprietorship of real or personal property, has, in its public capacity, like authority and remedies, and is subject to like liabilities in dealing with it through legal agencies or otherwise as natural persons. *Eight Hundred and Fifty-eight Bales of Cotton*, Bl. Pr. Cas. 325.

When the United States allows itself to be sued it must stand before the court like any other party before the court, affected by the same considerations as any other party. *Cook* v. *United States*, 10 Blatch. 59; *Eight Hundred and Fifty-eight Bales of Cotton*, *supra;* *United States* v. *Bostwick*, 94 U. S. 53, 66.

It is claimed that the suit for salvage cannot lie here, because the United States did not request the service. That proof of a specific request is not necessary is held in all the cases above cited, for in none of them was there proof of any specific request by the United States. The "implied contract growing out of the successful event of the service," *United States* v. *Morgan*, 99 Fed. Rep. 572, has always been held sufficient ground for the jurisdiction of the court to award salvage.

There is no merit in the claim that the Secretary of the Treasury might refuse to repay the duties under § 2984, Rev. Stat.

The supposition that the Government will not do justice is not to be indulged. *Gibbons* v. *United States*, 8 Wall. 269; *Supervisors* v. *United States*, 4 Wall. 435, 446; *Galena* v. *Amy*, 5 Wall. 708; *French* v. *Edwards*, 13 Wall. 511.

Permissive words will be construed to be mandatory in the interests of individuals. *Ralston* v. *Crittenden,* 13 Fed. Rep. 512; *New Orleans National Bank* v. *Merchant,* 18 Fed. Rep. 841; *National Bank of the Republic* v. *St. Joseph,* 31 Fed Rep. 216; *Provisional Municipality of Pensacola* v. *Lehman,* 27 Fed. Rep. 324, 332; *Little Rock* v. *United States,* 103 Fed. Rep. 324; *Village of Kent* v. *United States,* 113 Fed. Rep. 237. See also *People* v. *Supervisors,* 51 N. Y. 401; *Chinese Laborers' case,* 13 Fed. Rep. 291; *United States* v. *Kirby,* 7 Wall. 482.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This is practically a libel *in personam* for the salvage of government property, viz., of $6,000 duties collected by the Government upon a cargo of sugar saved from loss by fire, while on board a lighter in the harbor of New York.

The claim is prosecuted under what is known as the Tucker Act, 24 Stat. 505; Compiled Stat. 1901, pp. 752, 753, the first section of which declares that "the Court of Claims shall have jurisdiction to hear and determine . . . all claims founded upon the Constitution of the United States, or any law of Congress, . . . or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admirality, if the United States were suable."

By the second section concurrent jurisdiction with the Court of Claims was vested in the District Courts as to all claims not exceeding $1,000.

It is at least doubtful whether an ordinary claim for salvage can be said to arise upon contract, inasmuch as such services are rendered voluntarily, frequently in the absence of the owner of the property, and usually without a definite agreement for compensation. *The Liffey,* 6 Asp. M. L. C. 255;

*Five Steel Barges,* 15 P. D. 142. A claim for salvage may undoubtedly be founded upon an express contract, but where the services are rendered, as in this case, without request of an officer of the Government, and particularly where they are incidental to services rendered in the saving of private property, we do not think the claim can be said to arise upon any contract, express or implied, with the Government of the United States. But the claim may properly be said to be one for unliquidated damages in a case "not sounding in tort," in respect of which the party would be entitled to redress in a court of admiralty, if the United States were suable.

The Tucker Act also resolves any doubt which might arise as to the responsibility of government property for salvage service, since it was the very object of the act to give a direct recourse against the Government. Indeed, that question was settled by this court in 1869, in the case of *The Davis,* 10 Wall. 15, in which personal property of the United States, in transit from one port to another, was held liable to a lien for salvage services rendered in saving the property, following the rule laid down in England in *The Marquis of Huntly,* 3 Haggard, 246, and *The Lord Nelson,* Edward's Admiralty, 79. The same rule was adopted by Mr. Justice Story in *United States* v. *Wilder,* 3 Sumner, 308, although both in England and in this country vessels belonging to the United States, or to a foreign sovereign, and engaged in the public service, are exempt from seizure. *The Exchange,* 7 Cranch, 116; *The Charkieh,* L. R. 4 A. & E. 59; *The Constitution,* 4 P. D. 39; *The Parlement Belge,* 4 Asp. M. L. C. 234; *S. C.,* 5 P. D. 197.

The fact, however, that the property saved is not within the physical possession of the court, but is of an intangible nature, like freight or customs dues, does not prevent the maintenance of a libel *in personam* against the owner. Indeed, General Admiralty Rule No. 19 provides that "in all suits for salvage the suit may be *in rem* . . . or *in personam* against the party at whose request and for whose benefit the salvage services have been performed." In the case of freight the

practice is to require its payment into court. *The Leo*, Lush. 444.

At the basis of the claim in this case lies the proposition that, although the duties had been actually paid before the services had been rendered, the Secretary of the Treasury was *authorized* to refund duties upon so much of the sugar as would have been lost by the fire had not the cargo been rescued by the salvors. The obligation to refund such duties is contained in the following sections of the Revised Statutes:

"SEC. 2984. The Secretary of the Treasury is hereby authorized, upon production of satisfactory proof to him of the actual injury or destruction, in whole or in part, of any merchandise, by accidental fire or other casualty, while the same remained in the custody of the officers of the customs in any public or private warehouse under bond, . . . or while in custody of the officers of the customs and not in bond, or while within the limits of any port of entry, and before the same have been landed under the supervision of the officers of the customs to abate or refund, as the case may be, out of any moneys in the Treasury not otherwise appropriated, the amount of impost duties paid or accruing thereupon, and likewise to cancel any warehouse bond or bonds, or enter satisfaction thereon in whole or in part as the case may be."

Provision for such abatements or refunds is made in:

"SEC. 3689. There are appropriated, out of any moneys in the Treasury not otherwise appropriated, for the purposes hereinafter specified, such sums as may be necessary for the same, respectively; and such appropriation shall be deemed permanent annual appropriations. . . . For refunding duties paid or accruing on goods, wares, or merchandise injured or destroyed by accidental fire or other casualty, while in the custody of the officers of customs, in any public or private warehouse, . . . or after their arrival within the limits of any port of entry of the United States, and before the same have been landed under the supervision of the officers of the customs."

It was held by both courts below, and we think properly, that, if the Government were liable to refund these duties in case the property had been destroyed by fire, it was under the came obligation to pay salvage on such duties, as it would have been had property of the Government of the same value been directly saved by the exertions of the salvors.

It is true that the language of section 2984 is permissive, and merely "authorizes" the Secretary of the Treasury to abate or refund duties collected upon merchandise injured or destroyed by accidental fire or other casualty, and does not in terms *require* that this shall be done. We do not find it necessary, however, to go deeply into the learning expended upon the distinction between permissive and mandatory clauses, or to determine whether in a particular case mandamus would or would not lie against the Secretary for refusing to refund or abate duties in that connection. *D. M. Ferry & Co.* v. *United States*, 85 Fed. Rep. 550. Under the circumstances of this case, as set forth in the petition and agreed findings of fact, we are entitled to assume that the Secretary of the Treasury would have refunded these duties in case of the accidental loss of this sugar by fire, since the authority to do so is found in section 2984, and the money is appropriated for such refunding by section 3689. In a particular case we can imagine that doubts might arise as to the propriety of such refunding, but where a plain case is made in the findings of fact, and is not disputed, it would be an imputation upon the good faith of the Secretary to assume that he would refuse to return the duties, notwithstanding the language of the statute may be construed as permissive merely. We think the petitioner is entitled to build his case upon this assumption. *Supervisors* v. *United States*, 4 Wall. 435; *Galena* v. *Amy*, 5 Wall. 704; *French* v. *Edwards*, 13 Wall. 506.

It is insisted, however, that the Government is under no greater liability to pay this claim than it would have been if the duties had not been paid, and that the law is well settled that when property is saved at sea and brought into port, it is

subject to duty like other property, that the Government owes nothing to the salvors, and by parity of reasoning that no insurer of goods saved, nor a creditor who has advanced money thereon, nor a seaman whose wages are preserved, can be made liable for salvage.  The obvious reason for this is that the claim for salvage is founded upon the possession of the property saved at the time of the salvage service, and that the person incidentally benefited cannot be made liable under General Admiralty Rule 19, unless he has requested the salvage, or the service has been performed directly for his benefit. Interpreting this rule in the case of *The Sabine,* 101 U. S. 384, it was held that a libel would not lie *in rem* against the vessel and *in personam* against the consignee of the cargo.  But the mere possession of property may be in itself not only the origin of a right but the creation of a liability—as, for instance, in cases of money had and received or property lawfully acquired but unlawfully detained.  Had the duties upon these goods not been collected, the Government could not have been held liable, since the services would not have been performed for its benefit, although as a remote consequence therefrom it might have been advantaged.

The case of *The Five Steel Barges,* 15 P. D. 142, is authority for the proposition that the remedy *in personam* is not confined to the legal owner of the property saved, but extends to one who has a direct pecuniary interest in such property.  This was an action against five barges, two of which belonged to the Government, with whom the defendants were under contract to build and deliver the barges.  An action *in rem* was brought against the three barges, and an action *in personam* against the defendants, who had contracted with the Government and given it possession of the two barges.  The court sustained the action *in personam,* thinking it "perfectly clear that an action *in personam* lies against the owners of a vessel which has been saved, even though the property has been transferred to others and the lien lost."  Continuing, the President of the court, Sir James Hannen, observed: "I think it exists in cases

VOL. CCII—13

where the defendant has an interest in the property saved, which interest has been saved by the fact that the property is brought into a position of security. The jurisdiction which the court exercises in salvage cases is of a peculiarly equitable character. The right to salvage may arise out of an actual contract, but it does not necessarily do so. It is a legal liability arising out of the fact that property has been saved; that the owner of the property, who has had the benefit of it, shall make remuneration to those who have conferred the benefit upon him, notwithstanding that he has not entered into any contract on the subject. I think that proposition equally applies to the man who has had the benefit arising out of the saving of the property." This last sentence is particularly applicable to this case.

In the subsequent case of *The Port Victor*, 9 Asp. M. L. C. 163, the same court decided that where Government stores were being carried at the risk of charterers, these charterers were liable to pay salvage in a *personam* action apart from the liability of the stores *in rem*. The case was decided largely upon the authority of *The Five Steel Barges* and *Duncan* v. *Dundee, &c., Shipping Company*, in the Court of Sessions in Scotland, 4th Series, vol. 5, p. 742, and was affirmed by the Court of Appeals in an opinion by Lord Alverstone, 9 Asp. Mar. Cases, 182, in which great deference was shown to the decision of Sir James Hannen. See also Carver on Carriage by Sea, § 324a.

Although courts of admiralty have no general equity jurisdiction and cannot afford equitable relief in a direct proceeding for that purpose, they may apply equitable principles to subjects within their jurisdiction, and in the distribution of proceeds in their possession or under their control may give effect to equitable claims. 2 Parsons on Shipping, 344. Bearing in mind that the duties in this case had been actually collected, were in the hands of the Government and had been saved to it by the exertion of the salvors, who had been awarded salvage for saving the sugars upon which the duties had been

collected, a strong case is presented for the allowance of salvage, which should not be lost sight of in determining the principles applicable to the situation.

The case is clearly not one arising under the revenue laws as they are defined in *Nichols* v. *United States*, 7 Wall. 122, since the sections of the Revised Statutes above quoted are only incidentally involved.

The decree of the Circuit Court of Appeals is, therefore,

*Affirmed.*

MR. CHIEF JUSTICE FULLER dissented.