## THE PROGRESSIVE.

## THE ABBOTT.

### (District Court, E. D. New York.   July 21, 1921.)

**Salvage ☞34—Award for assisting disabled destroyer.**

    A tug *held* entitled to a salvage award of $1,500, for towing to a place of safety a naval destroyer, costing $1,500,000, which had struck against the rocks in Hell Gate and broken a propeller, and in such condition was in a position of danger, although, as it chanced, she would have drifted clear with the tide.

In Admiralty.   Suit by the Newtown Creek Towing Company, owner of the tug Progressive, against the United States, as owner of the destroyer Abbott.   Decree for libelant.

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for libelant.

Leroy W. Ross, U. S. Atty., of Brooklyn, N. Y. (L. P. Scott, Asst. U. S. Atty., of counsel), for the United States.

CHATFIELD, District Judge.   The libelant seeks a salvage award for services rendered under unusual circumstances to the United States Destroyer Abbott, on the morning of the 6th of July, 1920.

The Abbott (a large, modern vessel, costing upwards of a million and a half dollars) was at the time the last of four destroyers passing in single line up through Hell Gate, intending to go through Long Island Sound.   A dredge and scow operating to the south of Negro Point interfered with the passage of the boats, but the first three destroyers proceeded successfully through the Gate.

The Abbott, evidently in preserving her distance and in avoiding a tow passing to port behind the other destroyers, lost steerageway, or was compelled to turn too sharply at the point known as Scaly Rocks, and actually touched, near the stern, against the rocks upon the side of the channel opposite Cram's Bank, a neigborhood where many vessels have been injured, lives lost, and frequent difficulties encountered.   The starboard propeller was broken, and associate injuries received.

It is indisputable that a vessel like the Abbott could not with impunity, and much less with safety, be allowed to bump along under the influence of a strong flood tide, with her starboard side against the ledge known as Scaly Rocks.

Under the circumstances, the engines were stopped, and although her officers are not in exact agreement as to whether she was then aground, her anchor was let go, and she swung around with the tide. The tug Progressive, which had been met further back through the Gate with a tow, landed this tow and went to the Abbott's assistance, in response to a whistle.   Another tug also appeared upon the scene, and, at the request of the officers of the Abbott, the Progressive undertook to move the Abbott from her dangerous situation.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The captain of the Progressive disagreed with the officers of the Abbott as to how he should pull the Abbott away from the vicinity of danger, but ultimately took a line from the Abbott's bow, as she swung to her anchor chains, with her stern toward Long Island Sound. In this position she was lying considerably further to the east than where she had originally touched the rocks, and apparently was in a position where she would have drifted into safe and navigable water if she had slipped her anchor chain or had not been held at anchor.

The Progressive, on taking the line, actually moved the Abbott ahead or back toward the point where she had struck the rocks, in order that the anchor might be taken up, but it was found that the anchor was fouled in some obstruction upon the bottom, and it was ultimately released at one of the shackles. The Progressive then proceeded to draw the Abbott out in the stream, away from the shore, until she had reached a point where she could be turned again with her head toward the east, and the Progressive then towed her to the open waters of the Sound.

There is some dispute as to whether the commanding officer of the Abbott desired to be towed thus far, but this question is of small moment in comparison with the issue raised as to the necessity for rescuing the Abbott and the value of the services.

If the Abbott had been likely to incur further injury, no contention could be raised that the services were not of great value. They were undoubtedly salvage services, as the Abbott was in distress and apparently in imminent danger. The captain of the Progressive did not know that she was able to proceed. Her officers, not being entirely familiar with the waters, and judging from the general appearance of conditions, were justified in assuming that assistance was required, instead of risking their valuable craft upon the chance that she might escape without further damage. But as a matter of fact, her plates were not severely injured, and her other propeller was sufficient for navigation of the boat. After the Abbott swung away from the shore, she apparently could have rescued herself if she had not been anchored. The services of the Progressive were necessary in getting up the anchor and in handling the Abbott to avoid further danger while raising the anchor. No danger is shown to the Progressive herself, no heroism was exhibited, and, in time of peace as well as in war, loyalty would demand such an act of assistance to one of the government's agents, apart from the question of compensation.

But under the Tucker Act, jurisdiction is vested in the United States District Court to consider a claim against the government for services of this nature. This jurisdiction is limited to $10,000. The libelant, therefore, claims no more than $10,000, but argues that its services were actually worth more than that amount. Section 24, subd. 20 (Comp. St. § 991 [24]) and section 145, Judicial Code (section 1136); U. S. v. Cornell Steamboat Co., 202 U. S. 184, 26 Sup. Ct. 648, 50 L. Ed. 987.

The Progressive performed services of a higher nature than mere towing, but their value cannot be based upon the immense amount of damage which might have been inflicted if the circumstances had been

different. The Progressive undertook, in a commendable way, an enterprise which might prove to be exceedingly important and of great value, or might prove to be casual. As the facts turned out, the actual saving or prevention of loss was slight. The risk was not great, but the responsibility was considerable. In comparison with services of a similar character to valuable merchant craft, it would seem to the court that an award of $1,500 would be adequate. Under the circumstances, the costs of the trial must be borne by the libelant, and will be included as a part of the award in addition to the $1,500.