## THE GAELIC PRINCE.

### THE KATRINA LUCKENBACH.

(District Court, S. D. New York. July 6, 1922.)

**United States** ⬅═⟞125.

Libel of vessel for alleged salvage service rendered it while in possession and control of government *held* not within District Court's admiralty jurisdiction.

In Admiralty. Libel by the Prince Line, Limited, as owner of the steamship Gaelic Prince, against the steamship Katrina Luckenbach, her engines, boilers, etc., the Luckenbach Steamship Company, Inc., claimant, wherein the United States was impleaded. Libel dismissed for want of jurisdiction.

Kirlin, Woolsey, Hickox & Keating, of New York City (J. Parker Kirlin, John M. Woolsey, L. deGrove Potter, and E. S. Murphy, all of New York City, of counsel), for libelants.

Carter & Carter, of New York City (Peter Carter, of New York City, of counsel), for claimant of the Katrina Luckenbach.

Francis G. Caffey and William Hayward, U. S. Attys., both of New York City (John Hunter, of New York City, of counsel), for the United States.

KNOX, District Judge. The libel herein was filed by Prince Line, Limited, as owner of the steamship Gaelic Prince, upon its own behalf and upon that of her master, officers, and crew, against the steamer Katrina Luckenbach, for alleged salvage services rendered the latter in August, 1918, and valued by libelant at $150,000. At the time specified, the Luckenbach was in the possession and under the control of the United States government, being operated and supplied by the Navy Department for army service.

Upon July 31, 1918, the Gaelic Prince, bound for Baltimore, and the Katrina Luckenbach, bound for Newport News, both in ballast, sailed from Gibraltar in convoy with about 19 other vessels. The next day a division of the convoy took place, some vessels departing for ports distant from the ones to which the vessels named were bound. They, however, in company with the Textan, Santa Paula, and possibly one other, proceeded towards Southern United States ports. Prior to leaving Gibraltar, the masters of the several ships making up the fleet had been called in conference with American and British naval authorities, and were given instructions as to how the vessels should proceed, and under what command. The master of the Katrina Luckenbach, who had the rank of lieutenant commander in the United States Naval Reserve Force, was in charge of that portion of the original flotilla which proceeded towards Newport News. All went well until August 6, when the Luckenbach began to develop boiler trouble, on account of presence of water in her fuel oil, and to drop astern.

Various messages were exchanged between the vessels, and finally, upon August 9, the Gaelic Prince took the Luckenbach in tow, and thus proceeded for 1,356 miles, to Hampton Roads, arriving there upon August 16, 1918. During a part of the towage the Luckenbach was able to and did use her own propellers. The record is voluminous as to the character of the services rendered, the dangers encountered from weather conditions, and the presence of hostile submarines in the waters traversed by the vessels, all bearing upon the question as to whether the services of the Gaelic Prince were those of towage, or of salvage, and the value thereof. On November 25, 1919, the Luckenbach was released by the government, and returned to her owner, the Luckenbach Steamship Company, Inc.

The present libel was filed December 6, 1919. About a week thereafter, claimant of the Luckenbach filed a stipulation for value in the sum of $150,000, and in an answer thereafter filed excepted to the libel upon the ground that the Luckenbach at the time the alleged services were rendered was under governmental possession and control. At the same time such fact was alleged by way of an affirmative defense. There was also a denial of the allegation of fact charging a salvage service, and counter allegation made that the service constituted merely that of towage. Some time later claimant of the Luckenbach, pursuant to the Act of March 9, 1920, and under the fifty-ninth rule, impleaded the United States. The government duly appeared, and answered, setting up its possession and control; that at the time the master, officers, and crew of the Gaelic Prince were British naval officers, placed on board by the British government and paid by it; and that the services of such vessel did not constitute a maritime lien against the Luckenbach. It was asked that the libel be dismissed, or, if the jurisdiction of the court be upheld, that the court allow libelant a reasonable towage allowance.

The details of the services, and the circumstances under which they were rendered are of unusual interest, and by reason of the admittedly great value of the vessels involved, are important. It is my belief, however, that they need not be related, in view of the recent decision of the Supreme Court in the cases of The Steamship Western Maid and others, 42 S. Ct. 159, 257 U. S. 419, 66 L. Ed. 299, being Nos. 21, 22, and 23, original, of the October term, 1921, and delivered since this case was tried. I cannot but believe that what was there held by the majority of the court is decisive, so far as this court is concerned, of the question of its jurisdiction.

Libelant seeks to escape the import of that case by arguing that the judgment of the Supreme Court related merely to maritime torts, as to which the United States has not consented to be sued, and that, as the present claim is based upon salvage, for which the United States is liable, there is a distinction to be made as between the Western Maid decision and the facts at bar. Furthermore, it is said that this suit is not in any sense against the United States, but is the usual form of admiralty proceeding in rem for salvage, against the vessel which was the subject-matter of the salvage, quoting the former

Supreme Court rule No. 19 and its substantial counterpart, rule 18. Such rule, however, is not applicable to public ships. The Exchange, 7 Cranch, 116, 3 L. Ed. 287; U. S. v. Cornell Steamboat Co., 26 S. Ct. 648, 202 U. S. 184, 190, 50 L. Ed. 987.

Now, there is no question but that the Katrina Luckenbach was in August, 1918, a public ship, and under the terms of the vessel's requisition her master, officers, and crew had become the immediate employees and agents of the United States, with all the rights and duties as such, the vessel passing completely in to the possession, and the master, officers, and crew absolutely under the control of the United States. And as was said by Mr. Justice Holmes in the Western Maid decision: "The personality of a public vessel is merged in that of the sovereign." It would seem, therefore, that any liability incurred by the Katrina Luckenbach, and arising from her own necessities, or rendered at the request of her master, would be the obligation of the United States, and is payable, if at all, only in the manner and method prescribed by Congress. Since the Western Maid decision, I take it, no fiction of the admiralty can require privately owned property to stand as security for a public indebtedness. Such would be the result, if I should not hold the libeled vessel.

As the United States likewise disputed the court's jurisdiction to pass upon the merits of the controversy, I must dismiss the libel.