Booth, Judge,
delivered the opinion of the court:
The plaintiff corporation sues to recover for salvage service rendered the defendant as owner fro hoc vice of the steamship Katrina Luchenbach. There is no room for dispute as to the character or extent of the service performed. The salvor, the steamship Gaelic Prince, under circumstances to be hereafter narrated, on August 9, 1918, in mid-ocean, successfully accomplished towage connection with the Katrina Luchenbach and thereafter brought her safely into port, arriving on August 16, 1918. The disabled condition of the Luchenbach and the necessity for the service are conceded. When the petition in the case was filed October 20, 1922, obviously more than two years after the rendition of the service, the defendant interposed a motion to dismiss the same on the ground that section 4 of the act of August 1, 1912, 37 Stat. 242, was applicable as a two-year statute of limitations and precluded the proceedings, fortifying the argument by reference to a similar provision in section 5 of the suits in admiralty act of March 9, 1920, 41 Stat. 525. The court heard argument upon the issue and overruled the motion without prejudice to renew the contention on the merits of the case. The defendant now • vigorously presses the defense.
We adhere to our former opinion. The act of August 1, 1912, “An act to harmonize the national law of salvage,” etc., provides in terms as follows:
“ Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the right to remuneration for assistance or salvage services shall not be affected by common ownership of the vessels rendering and receiving such assistance or salvage services.
“ Seo. 2. That the master or person in charge of a vessel shall, so far as he can do so without serious danger to his *642 own vessel, crew, or passengers, render assistance to every person who is found at sea in danger of being lost; and if he fails to do so, he shall, upon conviction, be liable to a penalty of not exceeding one thousand dollars or imprisonment for a term not exceeding two years, or both.
“ Sec. 3. That salvors of human life, who have taken part, in the services rendered on the occasion of the accident, giving rise to salvage, are entitled to a fair share of the remuneration awarded to the salvors of the vessel, her cargo, and accessories.
“ Sec. 4. That a suit for the recovery of remuneration for rendering assistance or salvage services shall not be maintainable if brought later than two years from the date when such assistance or salvage was rendered, unless the court in which the suit is brought shall be satisfied that during such period there had not been any reasonable opportunity of arresting the assisted or salved vessel within the jurisdic7 tion of the court or within the territorial waters of the country in which the libelant resides or has his principal place of business.
“ Sec. 5. That nothing in this act shall be construed as applying to ships of war or to Government ships appropriated exclusively to a public service.
“ Sec. 6. That this act shall take effect and be in force on and after July first, nineteen hundred and twelve.”
The defendant applies the comprehensive exception in favor of the Government contained in section 5 of the act of 1912 as relating only to the provisions of the statute by which the crews of public vessels may be denied salvage remuneration for salvage services rendered other public vessels, and as an intended exemption in favor of the Government from the penal provisions of the law contained in section 2. We can not follow the contention. Section 5 uses the words “ nothing in this act,” language the ordinary meaning of which excludes the application of any part of the law to the Government. We may not indulge in seeming inequities respecting Government vessels in salvage cases where the statute itself is free from ambiguity. The reasons advanced for a contrary holding upon the part of the defendant rest upon inferences, and call for a construction of the law, which requires us to go outside the plain terms of the enactment and give effect to the sections of the act which favor the Government and withhold applicability where it *643 is otherwise. In view of what was held by the Supreme Court in The Western Maid, 257 U. S. 419, the Katrina Luekenbaeh was a Government vessel. In fact, in this very case Judge Knox of the United States District Court for the Southern District of New York so held in a proceeding in rem against the Luekenbaeh commenced by the present plaintiff in 1919. In dismissing the libel the court followed the decision of the Supreme Court in The Western Maid.
We do not gather from defendant’s brief that the jurisdictional issue raised in the case of the Venezuelan Meat Export Company, 58 C. Cls. 76, in this court under the suits in admiralty act of 1920 is renewed in the present case. If so, we think it sufficient to say that the adjudicated cases dispose of the same. Banque-Russo, etc., v. Emergency Fleet Corporation, 266 Fed. 897. Our jurisdiction attaches under section 145 of the Judicial Code, United States v. Cornell Steamboat Co., 202 U. S. 184.
The only remaining question for our decision is the amount of salvage to be awarded. The Gaelic Prince is a steel-screw cargo vessel built in 1918. Her dimensions and tonnage set forth in Finding V disclose a vessel of importance and great value — $1,089,000, her estimated worth, is conservative. The Katrina Luekenbaeh is accurately described in Finding VII. She was easily worth $2,310,000. The Gaelic Prince was at the time in the possession of and being operated by her owner, the plaintiff, under the line requisition scheme of the British Government, exemplified by the conditions of the British Admiralty Charter party known as T-99. On July 31, 1918 the Gaelic Prince, the Katrina Luekenbaeh, and 17 other vessels in convoy sailed from the port of Gibraltar. One day out from Gibraltar 15 of the ships were dispersed, and the third day found the Gaelic Prince and the Katrina Luekenbaeh in company alone. The Gaelic Prince was. bound for Baltimore, Md., and the Luekenbaeh for Newport News, Va., both ships being in ballast and under positive orders to remain together until Hampton Roads, Va., was; reached. On the afternoon of August 6, 1918, the Lucken-baeh, because of boiler and fuel trouble, found herself in. distress. She was compelled to reduce speed and signaled *644 the Gaelic Prince to do likewise. The GaeUc Prince stood by. The difficulties of the Luckenbach increased until finally in the early morning of August 9 the Luckenbach signaled for help and requested the Gaelic Prince to take her in tow. At this time the two vessels were 1,350 miles from Cape Henry, the sea was comparatively calm, the weather good; the only real disturbance was a high swell from the north-northeast. The master of the Gaelic Prince skillfully and expeditiously arranged a towing rigging and without mishap came alongside the disabled vessel, made fast to her after one failure, and commenced the towage. Good weather attended the voyage except for about one day. On the afternoon of the 10th the vessels encountered a heavy head wind and choppy sea, causing the vessels to pitch. However, from about noon of the 11th the weather was good and the sea smooth. The Luckenbach was enabled on and after the 13th to employ two of her engines at “ slow ahead ” and at all times had sufficient steam for her auxiliaries and steering gear. She could not have maintained herself without the assistance of the Gaelic Prince, for her boilers were in a precarious condition and had given serious trouble on the outward voyage. On August 16, 1918, the vessels arrived at Hampton Roads at 8.03 p. m. The towage ceased, and the Luckenbach proceeded under her own steam to Newport News. She had been successfully towed for a distance of about 1,356 miles. The plaintiff asks $200,-000 for this service.
Conceding the importance and value of all that was done, and taking into consideration the exceptional and hazardous situation attending the salvage, we are nevertheless of the opinion that the award asked is excessive. The award to a salvor is manifestly dependent upon the facts and circumstances of each individual case. Obviously it is not limited by any absolutely rigid rules of ascertainment applicable in every instance. The influencing factors forming the basis of the award are the dangers, the difficulties and the risk involved in the undertaking as well as the perilous situation of the salved vessel and the value of the *645 same to the owner. This we think is the uniform holding of the admiralty courts. It is not primarily a question of compensation. On the contrary, it is an award and dependent in amount upon the relative situation of the parties at the time. Both vessels in this instance were of great monetary value. Large as it was it was comparatively insignificant when compared with the necessity of their preservation and the invaluable service they were engaged in during the war. The Allies needed both vessels and needed them badly. Both vessels were new and their tonnage capacity made them especially available for the service in which they were engaged. The Gaelic Prince under its charter party was free to assist vessels in distress, and at liberty to deviate from its ordered course to save life. During this service it was off hire, and in this case refunded to the British Government the full amount stipulated in the charter party for hire as well as cost of fuel consumed. She stood by and successfully rescued a Government vessel in mid-ocean at a time and in a place where the submarine menace of the German Government was acute, and in so doing manifestly risked not only the safety of the vessel but the lives of her crew as well. While the actual salvage service was itself not unusual, and attended inherently with no greater dangers than usually appertain to such a service, the conditions under which it was rendered were unusual and indispensably involved the assumption of a much greater and far more hazardous risk than in times of peace. For this unusual risk we believe the plaintiff entitled to an award in excess of what we would be constrained to allow in the absence of such surroundings. The defendant vigorously contests this position. In the brief the Government contends that war risk was borne by the British Government, and that even so, subsequent events clearly demonstrate an absence of submarine danger.
As to the first contention, the assertion of facts admits the right of the court to consider war risks in arriving at its award, but challenges the- right of the plaintiff to recover it under the charter party. The charter party T-99, *646 as previously observed, granted permission to the owner to render salvage service at his own risk. The provision is set out in the fourth paragraph of Finding VI. Why was this provision made a part of the charter party if the owner was to reap the benefits of a salvage service and incur no risk other than the loss of hire and incidental expenses? It was a senseless stipulation if it declared the vessel “ off pay ” and charged the owner with the customary charges incident to the operation of a vessel, thereby suspending the charter party temporarily as to stipulated hire and operating expenses and leave to the charterer the assumption of the most imminent and costly risk to which the vessel was exposed. While engaged in actual war service redounding to the benefit of the charterer the latter logically assumed the risk incident thereto. If the crew saw fit to depart from that especial service and assume the hazards of a salvage service the charterer was willing it might do so and reap the possible rewards at his own risk and responsibility. The provision of the charter party could seemingly have no other application. The presence of submarines operating off the Atlantic coast in the waters through which these vessels sailed is so firmly established by the record that Finding XVIII is not susceptible to disproof.
The towage of a large vessel in a submarine area is a hazardous undertaking. It prevents maneuvering to escape in event of attack and is a salvage service warranting a most liberal award.
The plaintiff is entitled to an award of $98,000 in addition to the items of expense set forth in Findings XIX, XX, XXI, one-third of the award to go to the owner of the vessel and two-thirds to be distributed among the crew in proportion to the wages received, as appears from Finding XXIV. Judgment is awarded for the amounts as above. It is so ordered.
GRAham, Judge; Hat, Judge; Downey, Judge; and Campbell, Ohief Justice, concur.