Geabcam:, Judge,
delivered the opinion of the court:
This case involves the one question of the amount of award for salvage service rendered by the S. S. Cornelia to the Army transport Northern Pacific, which went aground on the shoals in the harbor of San Juan, Porto Pico, on Sunday, May 9,1920, about 4 p. m.
The Cornelia was owned by the Bull Insular Steamship Co., which had chartered her on a time basis to the Bull Insular Line, manning the vessel and furnishing all supplies except the fuel. The charter provided that all salvage should be “ for the owners’ and charterers’ equal benefit.”
The facts are fully set out in the findings, and it is not necessary to repeat them. The Cornelia did not unassisted salvage, and could not have salved, the vessel. It acted in the capacity of an anchor through hawsers attached to the two vessels, and assisted in holding the Northern Pacific in place, and possibly assisted some, though it is impossible to say how much, in getting it afloat. The principal instru-mentalities in finally floating the vessel were the steel hawsers and ground tackle which were attached to the tugs nnd lighters owned by the United States.
As soon as the Northern Pacific went aground she was immediately filled with water ballast, weighing her down to jmevent her from moving farther up on the shoal. The dangers and risks to the Northern Pacific were not serious, nor were those to the Cornelia. The weather was not stormy and the ship was in a relatively protected position in the h.arbor.
With the exception of the movement caused by the swell, which resulted in a gentle striking fore and aft with the rise and fall of the water, the Northern Pacific made no change in her position from the time of grounding until the time she came clear of the shoal.
*350 The Northern Pacvfie at the time of the services was a United States Army troop transport, a purchase of the Shipping Board, and was 525 feet in length, with a beam of 63 feet 1 inch. She was equipped with three Parsons direct-connected turbines, with three propellers. She was of 26,900 shaft and 28,000 indicated horsepower. She was well equipped and well found in every respect. Her value at the time of the services was $2,850,000.
The Cornelia was a steel freight steamship, in first-class condition, of 2,003 net and 3,216 gross tonnage, 328 feet in length, 46-foot beam, and 27 feet deep. Her draft was 17 feet aft and 12 feet forward. She was an oil burner and carried a crew of 35, 4 of whom were licensed engineers and 4 licensed deck officers. Her general cargo amounted to about 1,600 tons. Her ordinary cruising speed was 12 knots. Her value was $812,700, and the value of her cargo was $253,662 additional.
The question is the amount of award under all the circumstances to which the plaintiffs are entitled. Government property is subject to a claim of salvage, and this court has jurisdiction under the Tucker Act. United States v. Cornell Steamboat Co., 202 U. S. 184, 190. The award is in the nature of a reward for meritorious conduct and benefit conferred. “ Salvage is a reward or recompense given to those by means of whose labor, intrepidity or perseverance a ship or goods have been saved from shipwreck, fire, or capture.” It is not a mere compensation for work and labor. Circumstances of public considerations, the interests of commerce, the benefit and security of navigation, and the lives of seamen render it proper to estimate a salvage reward upon a more liberal scale. Cope v. Vallette Dry Dock Co., 119 U. S. 625, 628.
The facts found show that the total expenses of the plaintiff while employed in this service amounted to $6,-647.28, and that the daily net earnings of the Cornelia for the same period of time amounted to $3,523.50, a total of' $10,170.78.
Plaintiffs urge a demurrage claim for loss of earnings,, wages of crew, subsistence, and fuel for the time the Cornelia *351 was idle at New York by reason of her missing her regular-sailing. Another boat owned by plaintiffs was substituted on the schedule and went out in her place, taking the cargo which she would have taken. This claim is in effect one for los.s of profits, and to that extent it is too remote and speculative. There were strikes in force both at New York and San Juan at the time, which might have caused the delay. Aside from this the court has found that the delay in New York was due to failure of cargo offers.
There is another question which it is not necessary to decide here, and that is, whether the rule allowing demurrage in salvage cases is not confined to cases of collisions. The case of The Blackwall, 10 Wall, 1, 13, cited in plaintiffs’ brief, held:
“ Courts of admiralty usually consider the following circumstances as the main ingredients in determining the amount of the reward to be decreed for a salvage service: (1) The labor expended by the salvors in rendering the salvage service; (2) the promptitude, skill, and energy displayed in rendering the service and saving the property; (3) the value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed; (4) the risk incurred by the salvors in securing the property from the impending peril; (5) the value of the property saved; (6) the degree of danger from which the property was rescued.
“ Compensation as salvage is not viewed by the admiralty courts merely as pay, on the principle of a quantum meruit, or as a remuneration pro opere et labore, but as a reward given for perilous services, voluntarily rendered, and as an inducement to seamen and others to embark in such undertakings to save life and property.
“ Public policy encourages the hardy and venturous mariner to engage in these laborious and sometimes dangerous enterprises, and with a view to withdraw from him every temptation to embezzlement and dishonesty, the law allows him, in case he is successful, a liberal compensation.”
Considering the foregoing rule, the court must, in reaching-its conclusion as to the amount of salvage, be controlled by its best judgment under all the circumstances of the case. In. Anew of the service rendered by Government boats and the-relative service rendered by the plaintiffs in this case, we: *352 think that the award should be $30,000. Of this amount $10,000 should be awarded to the officers and crew, to be divided among them by the Bull Insular Steamship Co. in proportion to the wages they were receiving as set out in Finding IY, and the balance of $20,000 should be awarded to the plaintiffs. As the charter of the vessel provides that salvage shall be “ for the owners’ and charterers’ equal benefit,” the Bull Insular Steamship Co. should receive $10,000 and the Bull Insular Line (Inc.) $10,000. Judgment should be entered accordingly.
Hat, Judge; Booth, Judge; and Campbell, OMef Justice, concur.