## FIANNACCA v. BOOTH & CO. Inc.

District Court, E. D. New York.

Nov. 29, 1929.

James A. Gray, of Brooklyn, N. Y., for libelant.

E. Clyde Sherwood, of New York City (H. B. Clark, of New York City, of counsel), for respondent.

INCH, District Judge.

Libelant by his libel filed in the clerk's office March 26, 1926, has brought on for trial this suit in admiralty to recover damages for personal injuries.

The libel, among other things, alleges that on the 12th day of December, 1918, he was injured while working for the respondent, in the hold of a ship, moored at Pier 4 at Forty-Second Street, New York City, where he was "assisting in the loading thereof, and a bale of cotton fell from a defective, dangerous and unsafe sling and struck him causing the injuries complained of." He then recites alleged specific negligent acts, such as failing to provide a proper and safe place to work, competent fellow workmen, proper and safe ways, works, machinery, and appliances, etc.

The respondent has duly answered. In its answer, in addition to denials and other defenses, defendant sets up a defense of libelant's cause of action being barred by the state statute of limitations, section 49, paragraph 6, Civil Practice Act of the state of New York, by which a period of three years is allowed in which to commence this sort of action, and also the defense setting forth

facts at considerable length on which respondent claims that the libelant is "guilty" of such unreasonable delay and laches that this court should pronounce the claim "stale and unenforceable."

It thus appears that libelant has waited from December 12, 1918, to March 26, 1926, before commencing this suit. This is a period of almost eight years.

The respondent now moves to dismiss the libel on the ground that it appears as a matter of law not only that this cause of action was barred by the state statute of limitation, but should be dismissed by the court because of said laches. Arguments of counsel for both parties have been heard, certain evidence has been duly admitted, and the parties have duly entered into quite a complete stipulation as to facts. Thereupon, the court reserved decision on this motion and adjourned the trial pending its disposition.

It would seem fairly clear that if the libelant's delay was entirely unexplained there would be no question but that the motion should be granted. It would not seem an abuse of discretion to grant it.

The real question presented, however, is whether or not the explanation of libelant sufficiently overcomes this apparent abandonment or neglect. The following conceded facts may be mentioned.

At the time libelant was injured there were two distinct corporations in this city, to wit, Booth & Company, Inc., the respondent in this suit, and Booth Steamship Company, Limited. Each of these corporations had offices in the same suite, at 17 Battery Place, New York City. Both names of the corporations were upon the common entrance door. None of the officers of the Booth Steamship Company, Limited, resided in New York City or in the United States. Apparently this did not apply to the respondent.

This continued until April 1, 1920, from which date the respondent no longer occupied said office. Its name was removed from the door and it has maintained its own office at 57 Beekman street, New York City, from that date until the present time.

Later, in the year of 1920 (October 4, 1920), a suit was commenced by libelant in the state court against Booth Steamship Company, Limited, to recover for the injuries now mentioned in this libel. That complaint alleged that plaintiff was injured while employed by Booth Steamship Company, Limited. An answer was interposed by that corporation on November 4, 1920, in which, among other things, such employment was expressly denied.

Plaintiff had other counsel in that suit from those now appearing for him in this admiralty suit. No examination before trial was asked for or had as provided for by the state law. Instead, the case waited on the trial calendar and came up for trial on April 17, 1922, at which time, after counsel for the Booth Steamship Company, Limited, had stated in open court, that the plaintiff was not in the employ of the steamship company, a juror was withdrawn and a mistrial declared, and the case marked off the calendar.

That same day, the then counsel for plaintiff wrote a letter to the attorney for the Booth Steamship Company, Limited, asking him for the facts about this serious question of employment. About a week later an answer was written to this attorney, by counsel for the Booth Steamship Company, Limited, which distinctly informed him that plaintiff, at the time he was injured, was in the employ of the respondent, and that it was a corporation entirely distinct from the Booth Steamship Company and that the latter had nothing to do with such employment. This correspondence is respondent's Exhibit A.

It can fairly be inferred that the then counsel for plaintiff was at that time somewhat confused as to this position, for the reason that shortly after the accident libelant had applied for compensation by means of a claim filed with the New York State Industrial Commission, in which claim he had stated he was employed by the Booth Steamship Company, Limited. An award against such company had been made of $15 a week, and he had been paid this compensation for 67 weeks, a total of $1,005. This payment was by means of checks in each of which, however, it was stated that plaintiff had been injured "while in the employ of Booth & Company," the respondent here.

Thereafter, pursuant to a certain decision of the Supreme Court of the United States (Gonsalves v. Morse Dry Dock & Repair Co., 266 U. S. 171, 45 S. Ct. 39, 69 L. Ed. 228), which applied generally to such cases, this compensation ceased, for the reason that the State Industrial Commission thereafter held it had no jurisdiction. A few months thereafter the state suit, above mentioned, was commenced.

It also fairly appears that while it is here conceded that the respondent here had always paid the wages of libelant, yet he was in the habit of identifying his right to such wages by means of a brass tag bearing the

steamship company's name. So that this combination of what had happened before the State Industrial Commission and the possession of this tag, together with the statement of the plaintiff, might well tend to confuse his counsel. Hence this first suit can more readily be explained. What happened thereafter is not so easily explained.

We can now return to the time after the exchange of letters above mentioned. The then counsel of plaintiff, apparently not satisfied with this truthful statement of counsel for the steamship company, had the case restored to the trial calendar of the state court and it came on for trial in about two months. Again plaintiff persisted in his attempt to prove his employment by the steamship company, but at the close of his case a motion was made by the steamship company to dismiss the complaint upon the ground that plaintiff had failed to show that he was in the employ of the steamship company. This motion was granted. An appeal was taken to the Appellate 'Division of the Supreme Court, Second Department, and this judgment of dismissal affirmed (206 App. Div. 718, 200 N. Y. S. 922).

During all this time respondent in this suit had been insisting, in every way reasonably possible, that it was the proper person to be sued, and not the steamship company. Respondent was doing business and had its separate office at Beekman street in the city of New York.

The former counsel for the plaintiff thereupon seems to have withdrawn from the litigation.

On September 26, 1923, new counsel appeared for plaintiff. This is the same counsel as now appears for him in this suit. This new counsel was evidently unaware of what had previously taken place, although there is a fair inference that he must have known at least that the question of who should be sued was important and seriously in dispute for, before accepting retainer, he insisted on a stevedore, Frank Sabbatino, making an affidavit as to what he knew on this question. Libelant's Exhibit 2. This stevedore swore that he had hired the plaintiff for the steamship company and that plaintiff was in the employ of the steamship company at the time he was injured. This affidavit apparently entirely satisfied the new counsel and he accordingly commenced a new action, on October 18, 1923, against the steamship company. A motion was promptly made by that corporation to set aside such summons and on this motion the correspondence already referred to (respondent's Exhibit A), was brought to the attention of this new counsel for plaintiff. The motion was denied and thereupon the steamship company served an answer on March 4, 1924, also raising the same question. No examination before trial was had by this new counsel and apparently no effort was made to investigate or find out the true defendant.

After about two years delay this second suit also came on for trial.

All during this time the respondent here had its separate office at Beekman street and was transacting its business there.

This third trial apparently was completely tried. Not only would it appear that the question of negligence but the question of employment was submitted to a jury. The jury brought in a general verdict for defendant.

At this trial the steamship company also produced proof. All of this would seem to have been available to both counsel for plaintiff, during the many years in which this litigation had dragged along, had they but taken steps to secure it. No appeal was taken from this judgment. The verdict was a general one. The issues, apparently submitted, covered the entire cause of action of plaintiff.

It thus appears that libelant, while plaintiff in the state court, duly submitted his whole case to a jury of twelve men who unanimously decided against him, and while he claims that this unfavorable result came about solely by reason of his failure to sue the right defendant, in which claim respondent, for the purpose of this motion, agrees, yet the fact is not without some significance. Had the parties been the same or been privies, the judgment could have been a bar. Troxell v. Del. R. R. Co., 227 U. S. 434, 33 S. Ct. 274, 57 L. Ed. 586; 34 C. J. 1165. The claim of plaintiff in the state court was apparently that the identity of the steamship company and respondent was the same or at least that respondent was a privy. Bigelow v. Old Dominion Copper Co., 225 U. S. 111, at page 128, 32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875. Even if these corporations were considered by plaintiff joint tort-feasors apparently the culpability was claimed by plaintiff to be that of the steamship company, or that the latter was an agent or possibly a principal. Portland Gold Mining Co. v. Stratton's Independence (C. C. A.) 158 F. 63, 16 L. R. A. (N. S.) 677; Bigelow v. Old Dominion Co., 225 U. S. 111, page 127, 32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875.

However, the respondent here pleads no such bar or defense, U. S. v. Bliss, 172 U. S. 321, 19 S. Ct. 216, 43 S. Ct. 463, and same is not, therefore, available.

I shall therefore consider respondent as à "stranger" to this stale litigation (34 C. J. 1482), although I do not see from this record how one can tell from the general verdict that the jury did not find a failure to prove negligence and, therefore, found for the defendant as that they based their finding solely on the question of employment.

We will therefore assume, in accordance with this motion, that the jury decided for the defendant not on the ground that plaintiff had not been injured by the carelessness of his employer, but solely on the ground that plaintiff had sued the wrong party. This brings us to the present suit.

After this third trial counsel for plaintiff apparently decided that the respondent was, after all, the proper party to sue. For almost six years plaintiff had persisted in suing the steamship company. There had been three trials at which there had been this continued insistence by defendant and respondent, that the respondent was the proper party defendant and not the steamship company. What might have been an excuse for the first suit had long ceased to exist. All suits were now barred in the state court against either the respondent or the steamship company. Nor does this slight evidence on which this choice of counsel seems to have been based afford a reasonable basis in view of all the other circumstances, for thus persisting in suing the wrong defendant. I have no doubt but that plaintiff may have persuaded both counsel to make such choice, but that the choice was wrong is now conceded. That it should have been apparent many years ago, that it was a wrong choice, both to plaintiff and counsel, seems to me equally clear.

Accordingly, plaintiff having gotten himself into the above position proceeded to commence this suit in admiralty by his libel filed March, 1926.

This suit is an attempt to avoid not only the state statute of limitations but also to recover, almost twelve years after an accident, damages for serious personal injury. To be sure the trial is not before a jury, but that does not mean that a party may not be seriously harmed sometimes before a judge by an inability to place witnesses upon the stand, whose demeanor and credibility can be seen and weighed.

It is expressly stipulated "that the former employees of the respondent who were in active charge of the storeroom on the pier at which was moored the ship on which the plaintiff sustained his injuries in which storeroom slings, gear, rope and other equipment were kept by the respondent, and its former employees who carried the slings, rope, gear and equipment aboard the ship, and the officers and crew of the ship are not now available."

If this suit had been promptly commenced in this court after the first mistrial, there might be something said about the reasonableness of believing that witnesses might then be available to respondent, but where, after eleven years have passed since the accident, the fact that important witnesses are not now available becomes not only reasonable but natural.

I am not inclined, under the circumstances here, to hold that this court should confine the libelant to the three years statute of limitations of the state, owing to the facts relating to the State Industrial Commission and the slight but recognized information asserted by plaintiff and shown to counsel. This would consume the period from the day of the accident.

Had these circumstances not been present, however, I believe there would be authority for holding such period to be a bar. Davis v. Smokeless Fuel Co. (C. C. A.) 196 F. 753. It would also seem that, in holding as I do, I am still following the exceptions indicated in such authority.

I prefer to place my decision upon another ground.

"Although courts of admiralty have no general equity jurisdiction, and cannot afford equitable relief in a direct proceeding for that purpose, they may apply equitable principles to subjects within their jurisdiction." U. S. v. Cornell Steamboat Co., 202 U. S. 184, 26 S. Ct. 648, 651, 50 L. Ed. 987.

"The court is bound by its nature and constitution to give judgment upon equitable principles and according to the rules of natural justice. It cannot in a technical sense be called a court of equity. It is rather a court of justice." Benedict on Admiralty (5th Ed.) vol. 1, page 97, cases cited.

Justice applies to both a libelant and a respondent. Here there is a plain liability that justice may not be done the respondent. The mere fact that this possibly might appear to be "a special case of hardship," Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47

S. Ct. 600, 71 L. Ed. 1069, would seem to be insufficient.

The libelant, if he had proceeded promptly against respondent, whom counsel should have known employed him, would have been able to have had a trial which would have been fair to both parties. If his injuries, as alleged, were received through negligence, they are apparently serious enough to warrant substantial compensation. The acts of his various counsels are his own acts, in which he has acquiesced, after spending years, in spite of respondents' efforts, vainly pursuing the wrong defendant. He now seeks to obtain a judgment against this respondent whose witnesses are not now available.

It is not sufficient for counsel for libelant to now stipulate that respondent had a "full supply of ropes, slings, etc., in the storeroom etc." This does not take the place of vital witnesses who could be placed upon the stand and seen and heard, a defect which does not apply to libelant who is alive and can take the stand and tell his story.

In my opinion it would be unjust, under all the circumstances of this case, to allow libelant to succeed in this belated suit.

"The relief sought cannot be given consistently with the principles of justice, or without encouraging such delay in the assertion of rights as ought not to be tolerated by courts of equity. Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked." Abraham v. Ordway, 158 U. S. 416—420, 15 S. Ct. 894, 895, 39 L. Ed. 1036. Young v. Southern Pacific Co. (C. C. A.) 34 F.(2d) 135. This same rule would seem to apply here.

Accordingly, while this is not a court of equity, nor a court of law, it is within the power of this court of admiralty, to proceed along such equitable lines and prevent a plain injustice to one of the parties to a litigation. The explanation for the long delay is plainly insufficient to justify this suit, and I accordingly grant the motion to dismiss the libel.

Libel dismissed.