WILLIAM THORNEAL *vs.* CAPE POND ICE COMPANY & another.

Essex.    April 10, 1947. — July 2, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Harbor Worker. Admiralty. Negligence*, Toward harbor worker; Ice chute; *Employer's liability*: harbor worker, appliance, ice chute, Jones act, Federal longshoremen's and harbor workers' compensation act. *Jurisdiction*, Maritime matters, State courts. *Actionable Tort. Practice, Civil*, Exceptions: whether error shown. *Error*, Whether error shown. *Words*, "Seaman."

Evidence of the circumstances in which the fingers of a harbor worker employed on a vessel were caught and injured on a metal chute which he was using in conveying ice from a building on a wharf into the hold of the vessel warranted findings that the method of construction of the chute was defective and dangerous, that the worker did not know of such condition and was not warned of it either by his employer, the owner of the vessel, or by the ice company owning and furnishing the chute, that both the owner of the vessel and the ice company knew or ought to have known of such condition, and that each of them was negligent toward the worker.

Negligence of an ice company, in furnishing a defective chute which caused injury to a casual harbor worker when used by him on a vessel lying at a wharf in navigable water in the course of his employment by the owner of the vessel to assist in conveying ice from a building on the wharf into the hold of the vessel, was a maritime tort governed by the maritime, not by the State, law, but an action at law for such tort might be maintained against the ice company in a State court.

Under U. S. C. (1940 ed.) Title 33, § 905, a failure of the owner of a vessel "to secure payment of compensation as required by" the Federal longshoremen's and harbor workers' compensation act entitled a harbor worker casually employed by him, upon being injured through his negligence while at work on the vessel in navigable water assisting in the conveyance of ice through a chute from a building on a wharf into the hold of the vessel, at the worker's election to maintain an action at law against the employer under the Jones act, U. S. C. (1940 ed.) Title 46, § 688.

Denial of a motion by the defendant for a directed verdict in an action against the owner of a vessel by an injured employee of his under the Jones act, U. S. C. (1940 ed.) Title 46, § 688, was not shown to be error on the alleged ground that under § 905 of U. S. C. (1940 ed.) Title 33, the plaintiff's exclusive remedy was under the Federal longshoremen's and harbor workers' compensation act, where the record before this court contained nothing to show whether or not the de-

fendant employer had secured payment of compensation within the exception in said § 905 so that the employee would be precluded from exercising the election, therein provided, to proceed by an action at law.

The owner of a vessel lying at a wharf in navigable water was not liable .under the maritime law for maintenance and cure of a casual harbor worker in his employ who was injured while working on the vessel assisting in the conveyance of ice from a building on the wharf through a chute into the hold of the vessel.

TORT. Writ in the Superior Court dated August 31, 1944.

The action was tried before *Broadhurst*, J.

*J. Z. Doherty*, for Cape Pond Ice Company.

*J. F. Mirley*, for the defendant Linquata.

*A. L. Kaplan*, for the plaintiff.

QUA, J. On July 1, 1944, the plaintiff, a fisherman by trade but not at that time employed, was hired by the master of a fishing vessel owned by the defendant Linquata to "ice up" the vessel with crushed ice to be supplied by the defendant Cape Pond Ice Company at its wharf in Gloucester. On that same day the plaintiff, while upon the vessel, which was in navigable water at the wharf, and, while using an iron chute owned by the defendant Cape Pond Ice Company to convey the ice into the hold of the vessel, was injured, as he contends, by a defect in the chute.

The declaration is in four counts. Count 1 is against the defendant Cape Pond Ice Company alone. This count alleges that that defendant furnished the chute, and that the chute was in a dangerous and defective condition and was unsuitable for the safe and proper performance of the work. Both parties involved in this count treat it as a count for negligence causing injury, and no question of pleading in reference to it has been raised. Counts 2, 3, and 4 are each against the defendant Linquata alone. Count 2 alleges the employment of the plaintiff by that defendant as a seaman, the duty to supply suitable and safe appliances, and negligence of the defendant causing injury. This count expressly states that it is under the Jones act, U. S. C. (1940 ed.) Title 46, § 688, which in its present form was originally enacted by § 33 of the merchant marine act of 1920, 41 U. S.

Sts. at Large, 1007. Count 3 is for maintenance, care, and cure. This count alleges the employment of the plaintiff as a seaman on the defendant Linquata's vessel and the plaintiff's injury while in the performance of his duties. Count 4 alleges simply negligence of the defendant Linquata, his agents or servants, causing injury to the plaintiff and says that it is for the same cause of action as count 2. For authority to join in a single action counts against several defendants see G. L. (Ter. Ed.) c. 231, § 4A, inserted by St. 1943, c. 350, § 1.

There was a verdict for the plaintiff on each count. The only exceptions before us are those of the respective defendants taken to the refusal of the judge to order a verdict for each defendant upon each count. We consider only the questions whether it was right to submit each of the counts to the jury.

There was evidence of the tenor following. The crushed ice flowed by gravity from an aperture in the side of a building on the wharf through an enclosed tubular chute to the vessel. From the lower end of the enclosed chute one or more open chutes resembling those used in delivering coal were so placed that the ice would flow to the desired parts of the vessel. The plaintiff was handling the last chute so as to direct the final flow of the ice. He put this chute into the main hatchway lengthwise of the vessel, so that the lower end of the chute was resting in the hold and the upper end extended out five or six inches beyond the coamings on the forward part of the main hatchway near where the plaintiff stood. This chute had been lying on the deck alongside the hatchway. The master had told the plaintiff that this was a chute to put in the hatchway. When the plaintiff had got "so much" ice in he "had to pull the chute toward him" and to arrange the lower end a little higher so that the ice would flow farther into the hold. At the upper end of the chute there was an iron bar or bail attached to a pivot at each side of the chute in such a manner that the bar would swing around over the end of the chute as the bail of a pail swings over the top of the pail, except that, instead of extending around the end of the chute in a semi-

circular form, as the bail of a pail commonly extends over the top of the pail, this bar was straight from side to side of the chute and was bent at right angles near its point of attachment at each side of the chute. There was evidence that in swinging it would clear the ends of the sides of the chute by about an inch. The bar was used to hold the chute to the chute next above it in the chain of chutes. It was also available as a handle to raise or adjust the chute to which it was attached. The plaintiff testified that when he started to pull the chute out to readjust it he held this bar in his hand; that when he pulled the chute up the bar "went down" and a clamp located under the bottom of the chute "snapped up" and caught his fingers; that this clamp worked on the bar; that when the bar turned back that caused the clamp to snap up and catch his fingers; and that when he moved the bar, the bar went down and the clamp came up on the bottom of the chute and caught his fingers. There was evidence from the master of the vessel that the chute was "the same chute that was always used." The plaintiff further testified that he was a lumper and was not a member of the crew.

From a reading of the record and an examination of photographs of a chute which was conceded to be generally similar to the chute in question we find it difficult to believe that the accident happened by the closing of a clamp as the plaintiff contends it did. The plaintiff's testimony contains inconsistencies and was more or less shaken on cross-examination. It seems to us more probable that the plaintiff's fingers were caught between the bar and an angle iron which appears to have been bolted or riveted transversely under the bottom of the chute and across its entire width at its upper end in order that the chute might be prevented from slipping from the cap log of the wharf or from the coamings of a hatchway. It would seem possible that the plaintiff's fingers might be caught in this way if there was insufficient clearance between the bar or bail, as it came around the end of the chute, and the longitudinal half of the angle iron next to the bottom of the chute. However that may be, there was abundant evidence that the plaintiff's fingers were

actually caught at the upper end of the chute and injured, and we cannot say as matter of law that the jury could not accept the plaintiff's story of a clamp that moved with the bar and caught his fingers. If they believed this, they could find, we think, that there was a defect in the method of construction of the chute which made it dangerous. There was also evidence from which they could find that this chute had been furnished for the use of vessels and had been used in icing this same vessel for a considerable period of time. From all this they could find that not only the defendant Cape Pond Ice Company, owner of the chute, but the defendant Linquata as well knew or ought to have known of its condition. There was evidence that the plaintiff did not know of its condition, and that neither defendant warned him. On general principles, if the injury had occurred on land, both defendants could be found liable for negligently furnishing for the plaintiff's use a defective appliance. *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. *Crimmins* v. *Booth,* 202 Mass. 17. *D'Almeida* v. *Boston & Maine Railroad,* 209 Mass. 81. *Mitchell* v. *Lonergan,* 285 Mass. 266. *Barrett* v. *Builders' Patent Scaffolding Co. Inc.* 311 Mass. 41. *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96.

1. There was no error in denying the motion for a directed verdict for the defendant Cape Pond Ice Company on count 1. Doubtless the tort was a maritime tort, since the cause of action arose on navigable water. *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 217. *Washington* v. *W. C. Dawson & Co.* 264 U. S. 219, 224. *Northern Coal & Dock Co.* v. *Strand,* 278 U. S. 142, 144. *Nogueira* v. *New York, New Haven & Hartford Railroad,* 281 U. S. 128. *Parker* v. *Motor Boat Sales, Inc.* 314 U. S. 244, 246–247. *Wolf's Case,* 285 Mass. 181. *Lauzon's Case,* 302 Mass. 294, 295. Moreover, the plaintiff's employment was directly related to the use of the vessel upon the sea. The plaintiff's rights are therefore governed by the applicable maritime law and not by State law. *Chelentis* v. *Luckenbach Steamship Co. Inc.* 247 U. S. 372, 384. *Knickerbocker Ice Co.* v. *Stewart,* 253

U. S. 149, 159.  *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255.  *Engel* v. *Davenport*, 271 U. S. 33, 37.  *Garrett* v. *Moore-McCormack Co. Inc.* 317 U. S. 239, 243–245.  *Seas Shipping Co. Inc.* v. *Sieracki*, 328 U. S. 85, 88–89.  The principle of these decisions, now apparently well established, must, we think, be regarded as superseding the reasoning in *Kalleck* v. *Deering*, 161 Mass. 469, in so far as there is any inconsistency, and it may be that we must modify the method of approach employed in others of our cases which have dealt with maritime torts as if the jurisdiction were actually at common law.  For a collection and discussion of these cases see *Proctor* v. *Dillon*, 235 Mass. 538, 540–544.  Nevertheless, we think that these and other decisions at common law are not without persuasive force in cases of which the present action against the Cape Pond Ice Company (not the owner of the vessel and not the employer of the plaintiff) appears to be one, where the maritime law, so far as we are aware, has developed no peculiar rules of its own for the definition of the defendant's duty or the determination of its breach. In such cases it seems that the maritime law has been accustomed to look to the common law, actually if not expressly, for analogies.  *Sullivan* v. *Pittsburgh Steamship Co.* 230 Mich. 414, 419.  *The Buffalo*, 154 Fed. 815, 817.  See Holmes, J., in *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, 167; *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 63; *Spencer Kellogg & Sons, Inc.* v. *Hicks*, 285 U. S. 502, 513.  And because of the clause of the judicial code "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it . . ." (U. S. C. [1940 ed.] Title 28, §§ 41, 371), there is jurisdiction to entertain the action in a State court.  The remedy sought is merely the recovery of damages, and the ordinary civil procedure employed in the State courts is competent to give that remedy.  *Panama Railroad* v. *Johnson*, 264 U. S. 375, 388.  *Proctor* v. *Dillon*, 235 Mass. 538, 550–551.

Contributory negligence has not been argued, and in any event no question relating to the maritime rule of comparative negligence would arise on a motion for a directed ver-

dict. See *Socony-Vacuum Oil Co.* v. *Smith*, 305 U. S. 424, 431–433.

2. There was, we think, no error in refusing to order a verdict for the defendant Linquata on count 2 under the Jones act. This statute, now U. S. C. (1940 ed.) Title 46, § 688, provides, so far as here material, that "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." The plaintiff suffered personal injury in the course of his employment by the defendant Linquata. In icing the vessel he was a harbor worker. His work was analogous to that of a longshoreman or stevedore. He was therefore a "seaman" within the broad definition of that word as employed in the Jones act. *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50. *Uravic* v. *F. Jarka Co. Inc.* 282 U. S. 234, 238. *South Chicago Coal & Dock Co.* v. *Bassett*, 309 U. S. 251, 257. *O'Donnell* v. *Great Lakes Dredge & Dock Co.* 318 U. S. 36, 39. *Swanson* v. *Marra Brothers, Inc.* 328 U. S. 1, 3. *Silva* v. *Gorton Pew Fisheries Co. Ltd.* 303 Mass. 531, 534. The basis of liability under the Jones act is negligence, since by the express terms of that act the action is "at law," with common law rights and remedies modified as in the Federal employers' liability act applicable to railways. And as already shown there was evidence of negligence of the defendant Linquata.

But this defendant argues that the provisions of the Jones act, so far as they relate to this plaintiff, are now superseded by the provisions of the longshoremen's and harbor workers' compensation act, U. S. C. (1940 ed.) Title 33, §§ 901–950. Although the plaintiff was for some purposes a seaman, he was not a member of the crew of the vessel, and so was not excluded from the benefits of the latter act by § 903 (a) (1). *South Chicago Coal & Dock Co.* v. *Bassett*, 309 U. S. 251, 259–260. See *Silva* v. *Gorton Pew Fisheries Co. Ltd.* 303 Mass. 531, 534. But by § 905 the exclusive character of the remedy by compensation under the act is subject to the ex-

ception "that if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages . . . ," in which action the defendant may not plead as a defence the negligence of a fellow servant, assumption of risk, or contributory negligence. It seems to us that this means that if an employer fails to secure payment of compensation, the employee has at his election all the rights of action that he would have had if the compensation act had not been passed, including the right to bring under the Jones act an action which by the very words of that act is described as "an action for damages at law." U. S. C. (1940 ed.) Title 46, § 688. Recent decisions of the Supreme Court of the United States indicating the exclusive character of the remedies under the compensation act could not have been intended to weaken the clause saving the former rights of employees in instances in which the employer has failed to secure payment of compensation as required by the act. See *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251, 256; *Norton* v. *Warner Co.* 321 U. S. 565, 570; *Swanson* v. *Marra Brothers, Inc.* 328 U. S. 1; *Seas Shipping Co. Inc.* v. *Sieracki,* 328 U. S. 85, 100–102.

We pay no attention to the bald statement in the plaintiff's brief that the defendant Linquata was "not insured" under the act, just as we pay no attention to several purported extracts from the evidence quoted by that defendant in his brief which are also not included in the record. There is nothing in the record to show whether or not Linquata had secured payment of compensation as required by the act. We incline to the view that a defendant against whom an action is brought in the ordinary manner under general provisions of law, if he would contend that those provisions do not apply to him because of a compensation act which governs only if he has taken necessary steps to bring himself within its protection, has the burden of showing in some appropriate form that he has taken those steps, or at least must make it appear that he has in some proper manner seasonably insisted in the court below upon his exemp-

tion from liability on this ground. If this has not been expressly decided, it has, we think, been implied in our own decisions with respect to our own act. *White* v. *E. T. Slattery Co.* 236 Mass. 28, 30–32. *Levin* v. *Twin Tanners, Inc.* 318 Mass. 13, 17. See *Young* v. *Duncan*, 218 Mass. 346, 348; *Aleck's Case*, 301 Mass. 403; *Furlong* v. *Cronan*, 305 Mass. 464. So far as we are aware, practice in this Commonwealth has generally conformed to this view. But if the matter goes beyond local practice and can be thought to involve the substance of a Federal right (see *Garrett* v. *Moore-McCormack Co. Inc.* 317 U. S. 239), still it seems a just and proper rule that in a matter of this kind, where the defendant has full knowledge of all pertinent facts and the plaintiff commonly has no knowledge, the defendant should at least indicate his position before the plaintiff has prose- cuted an action at law to the point where a motion for a directed verdict is in order. *Salvuca* v. *Ryan & Reilly Co.* 129 Md. 235. *Spottsville* v. *Western States Portland Cement Co.* 94 Kans. 258, 261. *Nadeau* v. *Caribou Water, Light & Power Co.* 118 Maine, 325, 330. *McKay* v. *Delico Meat Products Co.* 351 Mo. 876, 886. *Hammett* v. *Vogue, Inc.* 179 Tenn. 284. *Acres* v. *Frederick & Nelson, Inc.* 79 Wash. 402. See *Ellis* v. *Gulf Oil Corp.* 48 Fed. Sup. 771. Compare, however, *Kuhn* v. *New York*, 274 N. Y. 118, 128–129.

3. We think that there was error in denying the defendant's motion for a directed verdict on count 3 for maintenance, care, and cure. In the maritime law liability for maintenance and cure, as it is commonly called, arises both historically and rationally out of the peculiar situation of a sailor on a vessel. It extends beyond accidents connected with the employment and includes injuries and sickness having no relation to any fault of the employer or any deficiency of the vessel. *Calmar Steamship Corp.* v. *Taylor*, 303 U. S. 525. It rests upon the dependency of a seaman on his ship and upon the fact that if there were no such liability he might find himself ill and helpless far from home. The grounds of this liability were fully set forth by Mr. Justice Story in the leading case of *Harden* v. *Gordon*, 2 Mason, 541, and were again discussed in the recent case of *Aguilar* v.

*Standard Oil Co. of New Jersey,* 318 U. S. 724.  They have no pertinence in the case of a casual harbor worker like the present plaintiff who, although a seaman for the purposes of the Jones act, was not a member of the ship's company and was in no way dependent upon the vessel, and who, presumably, would go to his own home ashore, as would any shore laborer, when his hours of work were at an end.  In *Yaconi* v. *Brady & Gioe, Inc.* 246 N. Y. 300, at page 307, the court, speaking through Chief Judge Cardozo, said, "No one would think of saying that his [a stevedore's] damages would be measured by maintenance, cure and wages."  The case of *Seas Shipping Co. Inc.* v. *Sieracki,* 328 U. S. 85, although it allowed to a stevedore the benefit of the shipowner's obligation of seaworthiness, did not go so far as to allow him the even more specialized admiralty remedy for maintenance and cure.  See as to this latter remedy the dissenting opinion of Stone, C.J., 328 U. S. 103–108.

4.  Count 4 remains to be considered.  This count simply alleges negligence of the defendant Linquata and consequent injury to the plaintiff.  The plaintiff calls it a common law count.  It is stated to be for the same cause of action as count 2 under the Jones act, which is also for the negligence of Linquata.  Since, as shown above, the tort was a maritime tort governed by maritime law, we are unable to see how any strictly common law right of recovery could exist, although it must be admitted that before comparatively recent decisions of the Supreme Court of the United States hereinbefore cited many cases had been decided in State courts as if the common law of the States applied of its own force.  See discussion in all opinions in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205.  It would be fruitless to inquire in this case whether by analogy to the common law or otherwise there exists in the maritime law, apart from the Jones act, some theory under which a harbor worker on a vessel, not a member of the crew, who is injured on board the vessel of his employer by negligence of the employer in respect to some appliance not a regular part of the vessel's equipment can recover compensatory damages (see, however, *The Osceola,* 189 U. S. 158, 175; *Chelentis* v. *Luckenbach Steam-*

*ship Co. Inc.* 247 U. S. 372, 382, 384; *Pacific Steamship Co. v. Peterson,* 278 U. S. 130; *Lindgren v. United States,* 281 U. S. 38; *Cortes v. Baltimore Insular Line, Inc.* 287 U. S. 367, 370–371.), since if such theory exists, recovery under it could be no greater than under the Jones act on count 2, which is stated to be for the same cause of action, and we hold herein that the plaintiff can recover under the Jones act. See *Whittemore v. Thompson-Winchester Co. Inc., ante,* 365, 367.

The result of this discussion is that the exceptions of the defendant Cape Pond Ice Company are overruled, the exceptions of the defendant Linquata are sustained, because of error in submitting count 3 to the jury, and judgment is to be entered for the plaintiff against the defendant Cape Pond Ice Company on count 1, and against the defendant Linquata on count 2. Of course the plaintiff cannot actually collect double damages.

*So ordered.*