**JANSSON v. SWEDISH AMERICAN LINE.**

**No. 4502.**

United States Court of Appeals, First Circuit.

Nov. 6, 1950.

214

John O. Parker, Boston, Mass. (Ely, Bartlett, Thompson & Brown, Boston, Mass., on the brief), for appellant.

Leo F. Glynn, Boston, Mass. (Thomas H. Walsh, Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and SWEENEY, District Judge.

MAGRUDER, Chief Judge.

Karl G. Jansson, a citizen of Massachusetts, brought suit in the court below on August 13, 1948, against Swedish American Line, a Swedish corporation, seeking $25,000 damages for personal injuries allegedly attributable to defendant's negligence. It is claimed that the plaintiff, a passenger on defendant's motor vessel Gripsholm on a voyage from Gothenburg, Sweden, to New York, sustained his injuries as a result of a fall on the vessel on January 3, 1947, while he was in course of boarding her at Gothenburg. Plaintiff chose, instead of filing a libel in admiralty, to institute a civil action on the common law side of the district court. Defendant's answer denied the allegations of negligence, and further set up as an affirmative defense that the complaint was not filed within one year after the date of the injury, as required by a provision of the ticket or contract of transportation. The district court gave a summary judgment for defendant, from which judgment the present appeal was taken.

From the pleadings, and from the affidavits submitted by the parties, further facts appear, as follows: Jansson purchased the ticket at defendant's office at Stockholm, Sweden. It was printed both in Swedish and in English. On the face of the ticket appeared the usual details covering the name of the vessel, the sailing date, the name of the passenger, the assigned berth and cabin, the rate, etc., and the recital that in consideration of the passage money the company "agrees to forward" the named passenger from Gothenburg to New York on the sailing for which the ticket was issued. Near the bottom of the ticket, on its face, appeared the printed statement: "For further conditions see the back of this ticket." Immediately below in writing was the place and date of issuance, "Stockholm, Dec. 23, 1946", under which was the printed name of the defendant company, with the signature of the agent or official who presumably issued the ticket. On the back side, in parallel columns, one in Swedish, the other in English, were certain provisions under the heading "Conditions of forwarding", from which we quote the only one now relevant: "In any case where Section 4283A of the Revised Statutes of the United States shall apply, the shipowner shall not be liable for any claim for loss of life or bodily injury unless written notice of the claim shall be given to the shipowner within six months from the day when the death or injury occurred. Suit to recover on any such claim shall not be maintainable unless commenced within one year after the day when such death or injury occurred. In all cases where Section 4283A does not apply, all the other provisions of this contract ticket, including those as to notice of claim and commencement of suit, shall be in full force and effect."[1]

1. The meaning of the concluding sentence is obscure. The ticket contained no "other provisions" as to notice of claim and commencement of suit. Therefore, if the voyage had been from Sweden to Halifax, Rev.Stat. § 4283A not applying, there would seem to be no stipulation in the ticket purporting to put a time limit on bringing suit.

The ticket was at no place signed by the plaintiff. When he bought it, the clerk at the shipping office did not call his attention to the conditions on the reverse side, nor did the plaintiff read the same at that time or at any time thereafter. He made payment for the ticket before it was delivered to him, and did not learn of the one-year limitation printed on the back until in June, 1948, when he consulted a lawyer, who suggested to him the possibility that the company would defend on this ground. The ticket was taken up by the purser shortly after the vessel sailed from Gothenburg.

■ One ground advanced by defendant in support of its motion for judgment was that the Swedish law was applicable and that since it had not been pleaded by the plaintiff, the complaint failed to set forth an essential element of the asserted cause of action. This argument the court below rejected. In its memorandum of decision the court recognized that since the negligence and resulting injury were alleged to have taken place on a Swedish vessel lying in Swedish territorial waters, "the cause of action set forth by the complaint is one which will be governed by the law of Sweden." But where, as here, the complaint set forth a conventional cause of action for bodily injuries arising from alleged negligence, the court deemed it appropriate to presume, at least at that preliminary stage of the case, that recovery could be had on such a cause of action under the Swedish law, as indeed under the laws of all civilized countries; further, the court stated: "If in fact the governing rules of that law differ from our own, the parties would have opportunity at the trial to bring those rules to the court's attention. Failure to allege the Swedish law in the pleadings in

an action such as this is not sufficient ground for judgment for the defendant at this stage of the proceedings." We think the court's ruling in this respect was clearly correct; and we do not understand that appellee presses the point on appeal in support of what the court below did, as distinct from the reasons the court assigned for the judgment rendered.

Having made the foregoing ruling, the district court then proceeded to hold as a matter of law that the ticket as a whole constituted the contract of transportation; that the one-year limitation expressed in the printed condition on the reverse side was a part of the contract, and as such was in all respects valid and binding upon the passenger by virtue of his having accepted and made use of the ticket, whether or not he had read the contract provisions or had had them called to his attention. Therefore, since the one-year contractual limitation fell just within the permissive limit sanctioned by § 4283A of the Revised Statutes,[2] the court held that the action was begun too late and gave judgment for the defendant.

■ In ruling that the one-year limitation on the back of the ticket was binding on the passenger as a part of the contract, the court apparently treated the matter as a point of "American law", for reference was made only to American authorities and precedents; neither defendant's answer nor its affidavit alleged that the ticket stipulation was valid and binding under the Swedish law of contracts; nor did the court purport to take judicial notice of the Swedish law in this respect. Appellant contends that the court erred in this ruling, "thereby depriving the plaintiff of his right to establish Swedish law on this issue at the trial", which he tells us he is

2. The section in question was added by the Act of August 29, 1935, 49 Stat. 960, and now appears in 46 U.S.C.A. § 183b, as follows:

"§ 183b. Stipulations limiting time for filing claims and commencing suit.

"(a) It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or

property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred. * * * "

prepared to do, if afforded an opportunity. Incidentally, such a question of foreign law, though commonly stated to be one of fact, is for the court, not the jury. Wigmore on Evidence (3d ed. 1940) § 2558.

■ At the outset, it is to be noted that this is not a case falling within the rule of Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, under which a federal district court sitting in Massachusetts would be obliged, in a diversity of citizenship case, to apply the local substantive law of Massachusetts (including its rules applicable to choice of law problems) as declared by the courts of the State. True, the complaint herein starts off with the recital: "Jurisdiction in this action is based on diversity of citizenship and amount." But the cause of action asserted is founded on a maritime tort, cognizable in admiralty; and hence the substantive law to be applied is the "general maritime law" of which the ultimate expositor is the Supreme Court of the United States.

■ In Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 160, 40 S.Ct. 438, 440, 64 L.Ed. 834, the Supreme Court laid down as a settled proposition: "The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction." Beginning with the Judiciary Act of 1789, 1 Stat. 77, the exclusive jurisdiction of the district courts of the United States over civil causes admiralty and maritime has been coupled with a provision "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it". 28 U.S.C. §§ 41(3), 371 (1946 ed). In the corresponding provision of the 1948 revision of the Judicial Code, 28 U.S.C.A. § 1333, the language of the saving clause has been changed somewhat in phraseology but not in intent, as the reviser's note makes clear. Referring to the saving clause, the Court said in The Moses Taylor, 1866, 4 Wall. 411, 431,

18 L.Ed. 397: "It is not a remedy in the common-law courts which is saved, but a common-law remedy." So, the common law courts may give the conventional remedy of an action of damages, for injuries resulting from unseaworthiness of a vessel or from other maritime torts, or for breach of a shipowner's obligation to furnish "maintenance and cure" to a seaman injured in the service of the ship. But, as pointed out in Chelentis v. Luckenbach S. S. Co., Inc., 1918, 247 U.S. 372, 384, 38 S.Ct. 501, 504, 62 L.Ed. 1171, while "under the saving clause a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law", the complaining party was not thereby given "an election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law." We take it now to be established by an impressive body of precedent that when a common law action is brought, whether in a state or in a federal court, to enforce a cause of action cognizable in admiralty, the substantive law to be applied is the same as would be applied by an admiralty court—that is, the general maritime law, as developed and declared, in the last analysis, by the Supreme Court of the United States, or as modified from time to time by act of Congress. Chelentis v. Luckenbach S. S. Co., Inc., supra; Carlisle Packing Co. v. Sandanger, 1922, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927; Engel v. Davenport, 1926, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813; Panama R. R. Co. v. Vasquez, 1926, 271 U. S. 557, 46 S.Ct. 596, 70 L.Ed. 1085; Garrett v. Moore-McCormack Co., Inc., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Seas Shipping Co., Inc. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Port of New York Stevedoring Corp. v. Castagna, 2 Cir., 1922, 280 F. 618, 624; Hall-Scott Motor Car Co. v. Universal Ins. Co., 9 Cir., 1941, 122 F.2d 531, 534, certiorari denied, 1941, 314 U.S. 690, 62 S.Ct. 360, 86 L.Ed. 552; Sea Products Co. v. Puget Sound Navigation Co., 1937, 191 Wash. 276, 280, 71 P.2d 43, 45; Thorneal v. Cape Pond Ice Co., 1947, 321 Mass. 528, 74 N.E. 2d 5. Cf. Caldarola v. Eckert, 1947, 332

U.S. 155, 157-158, 67 S.Ct. 1569, 91 L.Ed. 1968.

■ The developing body of the general maritime law has been enriched occasionally from common law sources. Atlantic Transport Co. v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208; United States v. Cornell Steamboat Co., 1906, 202 U.S. 184, 194, 26 S.Ct. 648, 50 L.Ed. 987; Higgins v. Anglo-Algerian S. S. Co., Ltd., 2 Cir., 1918, 248 F. 386, 389; Texas Co. v. Hogarth Shipping Co., Ltd., D.C.S.D.N.Y., 1919, 265 F. 375. See the remarks of Holmes, J., dissenting, in Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 220–222, 37 S.Ct. 524, 61 L.Ed. 1086. See also Thorneal v. Cape Pond Ice Co., supra, 321 Mass. at 533, 74 N.E.2d 5. But it is still a federal question how far such notions developed at common law or in equity shall find place in the amalgam of the general maritime law. So, too, the general maritime law may be supplemented to some extent by state statutes; but again, it is a federal question how far such statutes may be taken up and applied to matters within admiralty cognizance without working "material prejudice to the characteristic features of the general maritime law" or interfering "with the proper harmony and uniformity of that law in its international and interstate relations." Southern Pacific Co. v. Jensen, supra, 1917, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086; Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321. Thus, as applied to injuries received by a stevedore on navigable waters while engaged in loading a ship, the workmen's compensation law of the state "has not been recognized and taken up as part of the admiralty jurisprudence of the United States." Spencer Kellogg & Sons, Inc. v. Hicks, 1932, 285 U.S. 502, 514, 52 S.Ct. 450, 454, 76 L.Ed. 903. In Union Fish Co. v. Erickson, 1919, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261, it was held that the California Statute of Frauds could not be applied to invalidate an oral maritime contract made in California. On the other hand, state wrongful death acts have been applied, although the fatal impact occurred on navigable waters. Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210; Spencer Kellogg & Sons, Inc. v. Hicks, supra, 1932, 285 U.S. 502, 52 S. Ct. 450, 76 L.Ed. 903.

In Garrett v. Moore-McCormack, supra, a seaman brought a common law action in a state court for a cause of action (1) under the Jones Act, 46 U.S.C.A. § 688, and (2) under the general maritime law for maintenance and cure. The state court gave judgment for the defendant, holding the seaman, as a matter of state law, bound by a release which he had executed. On certiorari, the Supreme Court reversed, holding that the issue of validity of the seaman's release was a substantive matter governed by admiralty principles rather than by the local law of the state, both as applied to the claim under the Jones Act and to the claim for maintenance and cure under the general maritime law. The Supreme Court said, 317 U.S. at 245, 63 S. Ct. at page 251, 87 L.Ed. 239, that the state court was bound to proceed in such manner that all the substantive rights of the parties under controlling federal law would be protected. "Whether it did so, raises a federal question reviewable here under § 237(b) of the Judicial Code, 28 U.S.C. § 344(b)", a provision now found in substance in 28 U.S.C.A. § 1257(3).

■ If the "Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law", and if, when a cause of action cognizable in admiralty is sued on at common law, either in a state court or on the law side of a federal district court, the court must apply the general maritime law rather than the law of the state of the forum, and if the judgment of a state court in such a case is reviewable by the United States Supreme Court because a federal question is necessarily involved, then it would plainly follow, we think, that a civil action for damages filed on the law side of a federal district court, to enforce a claim cognizable in admiralty, may be maintained in the district court pursuant to 28 U.S.C.A. § 1331 as a case arising "under the Constitution, laws or treaties of the United States"—assuming, of course, that the requisite jurisdictional amount is pres-

ent, and that the venue requirements of 28 U.S.C.A. § 1391 are met. This would be so whether or not diversity of citizenship also existed, for such diversity, if present, would only be a cumulative or additional basis of jurisdiction under 28 U.S.C.A. § 1332.[3] However that may be, the court below undoubtedly had jurisdiction in the case at bar, for diversity of citizenship in fact was present. 28 U.S.C.A. § 1332(2); In re Hohorst, 1893, 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211; Barrow S. S. Co. v. Kane, 1898, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964. And the cases above cited make clear that the law to be applied was the general maritime law, not the law of Massachusetts. This would have been so even had suit been brought in a Massachusetts state court, as the Supreme Judicial Court itself recognized in Thorneal v. Cape Pond Ice Co., 1947, 321 Mass. 528, 74 N.E.2d 5, referred to above.

In developing and formulating "approved rules of the general maritime law", the federal courts are necessarily confronted, from time to time, with choice of law problems; and the rules for determining such choices become themselves a part of the general maritime law as understood and applied in the United States. Thus it would be universally agreed, as the court below stated in the case at bar, that the Swedish law determines whether any initial liability for a maritime tort arose out of the circumstances of the plaintiff's injury on board a Swedish ship in Swedish territorial waters.

But the present case is complicated by the fact that the asserted maritime tort arose out of the performance of a contract made in Sweden; and the defense is that this liability, if it once existed, has been extinguished by a condition subsequent, so to speak, that is, by failure of the plaintiff to bring suit within a year, as required by the printed condition on the back of the ticket, claimed by the defendant to be a part of the contract of carriage and as such valid and binding upon the passenger. What law determines whether this defense is good? In answering this question we have found no Supreme Court case near enough to the factual situation here presented to be deemed a controlling precedent, and so we are free to examine the matter on principle.

Defendant contends that the reference to § 4283A of the Revised Statutes of the United States contained in the printed condition on the back of the ticket indicates that the parties intended the validity and binding effect of the stipulation to be governed by American, rather than Swedish, law, and that for this reason American law should be controlling, citing Pritchard v. Norton, 1882, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104; Liverpool and Great Western Steam Co. v. Phenix Ins. Co., 1889, 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788; Pinney v. Nelson, 1901, 183 U.S. 144, 22 S.Ct. 52, 46 L.Ed. 125. It is true these cases contain language to the effect that, when the parties contract with the law of some particular jurisdiction in view, the law of that jurisdiction will be applicable in determining the interpretation and validity of the contract, as the law which the parties presumably intended to be controlling. Similar expressions are to be found in a great number of cases. But at least where the contract contains no explicit provision that it is to be governed by some particular law, what the courts applying this intention test actually seem to do is to examine all the points of contact which the transaction has with the two or more jurisdictions involved, with a view to determining the "center of gravity" of the con-

3. But see Philadelphia & Reading Ry. Co. v. Berg, 3 Cir., 1921, 274 F. 534, 539; certiorari denied 1921, 257 U.S. 638, 42 S.Ct. 50, 66 L.Ed. 410; Modin v. Matson Navigation Co., 9 Cir., 1942, 128 F.2d 194, 196; Branic v. Wheeling Steel Corp., 3 Cir., 1946, 152 F.2d 887; Stamp v. Union Stevedoring Corp., D.C.E.D. Pa.1925, 11 F.2d 172, 174; Erlich v. Wilhelmsen, D.C.E.D.N.Y.1942, 44 F. Supp. 414, 415. These cases, all without extensive consideration or analysis of the problem, assume that, except where the complaint is predicated upon some specific act of Congress, such as the Jones Act, a federal district court has no jurisdiction on the law side to entertain a civil action for damages on a cause of action of admiralty cognizance, in the absence of diversity of citizenship.

tract, or of that aspect of the contract immediately before the court; and when they have identified the jurisdiction with which the matter at hand is predominantly or most intimately concerned, they conclude that this is the proper law of the contract which the parties presumably had in view at the time of contracting. See Harper, Taintor, Carnahan and Brown, Cases on Conflict of Laws 361-67 (1950); Nussbaum, Conflict Theories of Contracts, 51 Yale L.J. 893 (1942). In the infinite variety of circumstances presenting choice of law problems relating to contracts, it is safe to say that there is no simple and dependable rule of thumb by which the choice may be unerringly made.

■ In a case like the present, it is quite unrealistic to say that "the parties" intended their rights and obligations to be governed by one law or another. This is not a contract the terms of which have been hammered out by the give-and-take of negotiation. The ticket alleged to embody the contract is a printed form prepared in advance by the common carrier, and handed to the passenger upon payment of the passage money. Here the passenger did not even learn of what was printed in the condition on the back of the ticket until more than a year had elapsed after the accident. Before we get to the question what law governs the validity of the agreement, there is the preliminary question what constitutes the agreement of the parties—whether the printed language on the back of the ticket may be deemed a part of the agreement. It would be the sheerest fiction to assume that the passenger had the intention that the binding effect of the stipulation should be governed by American law, or that the shipowner could have supposed that the passenger so understood and intended. In the absence, then, of a clearly manifested *mutual intention* that American law should determine whether the printing on the back of the ticket was a part of the contract and whether as such it was valid and binding, we might say that these questions must be determined by the law of Sweden, the place where the contract was made, upon authority of the following quotation from a case relied upon

by appellee, Liverpool and Great Western Steam Co. v. Phenix Ins. Co., supra, 129 U.S. at 458, 9 S.Ct. at page 478, 32 L.Ed. 788: "This review of the principal cases demonstrates that, according to the great preponderance, if not the uniform concurrence, of authority, the general rule that the nature, the obligation, and the interpretation of a contract are to be governed by the law of the place where it is made, unless the parties at the time of making it have some other law in view, requires a contract of affreightment, made in one country between citizens or residents thereof, and the performance of which begins there, to be governed by the law of that country, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other country."

Lest this be deemed an over-simplified answer to the question presented, we shall add further considerations which point to the same conclusion.

In developing the body of rules governing choice of law problems, the ideal in view is the recognition, by common consent of the states and nations having civilized systems of law, of a proper substantive law of the transaction at hand, to be uniformly applied regardless of the forum in which the litigation happens to be instituted. No doubt this ideal cannot be fully realized without the aid of international convention. But measurable advances have been made; and further progress to that end is possible if courts would not be too predisposed to apply the law of the forum with which they are of course most familiar, instead of candidly examining to see whether the transaction as a whole, in its more important aspects, is not centered in some other jurisdiction, whose law would therefore more appropriately be selected as the applicable law.

■ Thus in the present case, the injury of which the plaintiff complains was received on a Swedish ship in Swedish territorial waters. If any liability for a maritime tort then came into being, it was concededly by imposition of Swedish law. Davis v. Mills, 1904, 194 U.S. 451, 453, 454, 24 S.Ct. 692, 48 L.Ed. 1067. The maritime

tort, if any, was in the course of performance of a maritime contract of carriage made by a Swedish shipowner in Sweden, calling for performance first in Sweden, then on the high seas on the Swedish vessel, and concluding by delivery of the passenger at an American port. The only factual elements bearing any relation to the United States are that the passenger happened to be an American citizen and that the voyage in question was to terminate at an American port. These seem to us wholly incidental factors in a transaction which as a whole was predominantly of Swedish concern. If suit on this maritime tort had been brought in a Swedish court more than a year after the accident, one would expect, quite legitimately, that such court would apply Swedish law to determine whether, as a result of any provision constituting a part of the Swedish contract of carriage, the tort liability which was created by Swedish law on January 3, 1947, bore an inherent characteristic or condition subsequent whereby such liability would be extinguished by lapse of a year without the filing of suit. That plaintiff chose, rather, to sue in an American court to enforce this Swedish-created liability should make no difference in the substantive law to be applied. The reference should be to the Swedish law to determine not only the defendant's initial liability, but also whether this liability subsisted at the date the suit was filed.

■■■ The act of Congress referred to on the back of the ticket, and quoted above in the footnote,[4] is not a statute of limitation. It does not say, in effect, that no American court shall entertain an action on a foreign tort unless commenced within one year, even though the liability is still a subsisting one by the law of its creation. The statute says that it shall be unlawful for a shipowner to contract for a shorter period than one year within which suit must be brought, but it does not command American courts to apply American law in determining whether the language on the back of the ticket is a part of the contract of carriage and as such valid and binding upon the passenger. In other words, the statute declares no public policy against allowing suit to be filed here nineteen months after the tort was committed if, by the law of the foreign country within whose territory the tort occurred and in which the ticket was issued, the passenger was not contractually bound by the printed language on the back of the ticket purporting to require suit to be brought within one year.[5]

4. See footnote 2, supra.

5. Quite a different problem would be presented if the ticket had provided that suit must be brought within six months, and if by Swedish law this provision were valid and binding on the passenger. Then, if suit were brought in a United States court within nine months after the accident, the question would be whether such court, pursuant to the command of 46 U.S.C.A. § 183b, would have to disregard the six-month stipulation as invalid and entertain suit to enforce the Swedish-created liability, though by Swedish law the tort obligation had expired by lapse of time. The statute applies to voyages "from or between ports of the United States and foreign ports", which would seem to include a voyage from a foreign port to a port of the United States as well as vice versa, as was held in Knott v. Botany Mills, 1900, 179 U.S. 69, 21 S.Ct. 30, 45 L.Ed. 90, in interpreting identical language in § 1 of the Harter Act, 46 U.S.C.A. § 190 et seq.

But has Congress extraterritorial power to make "unlawful" the act of a Swedish shipowner in making a certain contract in Sweden? If a domestic forum entertains suit on a foreign-created obligation, may it, consistently with due process, impose a liability greater in extent or in duration than that recognized by the law of the foreign country which created the obligation upon which the suit was based? See Slater v. Mexican National R. R. Co., 1904, 194 U.S. 120, 126, 24 S.Ct. 581, 48 L.Ed. 900; Western Union Telegraph Co. v. Brown, 1914, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457; Deutsche Bank v. Humphrey, 1926, 272 U.S. 517, 519, 47 S. Ct. 166, 71 L.Ed. 383; Zimmermann v. Sutherland, 1927, 274 U.S. 253, 255, 47 S.Ct. 625, 71 L.Ed. 1034; Home Ins. Co. v. Dick, 1930, 281 U.S. 397, 408, 50 S.Ct. 338, 74 L.Ed. 926; Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 1934, 292 U.S. 143, 149, 54 S.Ct. 634, 78 L.Ed. 1178. With these cases compare Knott v. Botany Mills, 1900, 179

We do not regard Scheibel v. Agwilines, Inc., 2 Cir., 1946, 156 F.2d 636, as making against the conclusion we have reached. There the plaintiff purchased a ticket in Florida for transportation from Miami to New York City on the defendant's steamship. Clause 11 of the ticket contained a provision similar to the one on the reverse side of the ticket in the case at bar to the effect that, in any case where § 4283A of the Revised Statutes shall apply, no suit shall be maintained against the company in any jurisdiction, nor shall the company be liable for bodily injury or death, unless suit is commenced within one year from the day on which the death or injury occurred. Shortly after going aboard, and while the vessel was still in Florida waters, the plaintiff had a fall by reason of the defendant's negligence, as he alleged. Just under two years after the date of the accident, the plaintiff brought an action for personal injuries in a state court in New York, which the defendant caused to be removed to the federal court on the ground of diversity of citizenship. The trial court set aside a verdict for the plaintiff and entered judgment for the defendant on the ground that the time limitation provision in the ticket was binding on the passenger. In so doing, the court overruled a contention by the plaintiff that the stipulation was void by force of a Florida statute, F.S.A. § 95.03, providing that all stipulations contained in any contract "fixing the period of time in which suits may be instituted under any such contract, or upon any matter growing out of the provisions of any such contract, at a period of time less than that provided by the statute of limitations of this state, are hereby declared to be contrary to the public policy of this state, and to be illegal and void." Florida had a four-year statute of limitations for bringing actions for personal injuries. Upon appeal by the plaintiff the judgment was affirmed.

The point in the Scheibel case is that it presented no problem of choice of law. All the operative facts occurred within the territorial limits of the United States. The maritime contract was made in Florida for transportation to New York. The alleged negligent injury occurred within Florida territorial waters. In these circumstances, the only law possible to be applied, as we have explained in an earlier part of this opinion, was the general maritime law of the United States, in its domestic or internal aspect. Florida could no more by statute invalidate a provision of a maritime contract made within its borders than could California by its Statute of Frauds invalidate an oral maritime contract made there, as was held in Union Fish Co. v. Erickson, 1919, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261. The Florida statute was not "recognized and taken up as part of the admiralty jurisprudence of the United States" because of the controlling effect of an act of Congress, which has paramount legislative power as to matters within the admiralty and maritime jurisdiction of the United States. Section 4283A of the Revised Statutes, 46 U.S.C.A. § 183b, was accepted as a declaration that it was not against the public policy of the United States for a shipowner to stipulate for a one-year period of limitation. This period Congress evidently regarded as a reasonable one, affording the passenger ample opportunity to enforce his rights. Therefore the court, which was applying not the local law of Florida but the general maritime law of the United States, held valid the time limitation in the maritime contract made in Florida.

The judgment of the District Court is vacated and the case is remanded to the District Court for further proceedings not inconsistent with this opinion; the appellant recovers costs on appeal.

U.S. 69, 74, 21 S.Ct. 30, 45 L.Ed. 90; Mavromatis v. United Greek Shipowners Corp., 1 Cir., 1950, 179 F.2d 310, 315. Of course, if the injurious impact occurred within the territorial waters of the United States, it would be the law of the United States which would create and define the ensuing tort liability, and it would be competent for Congress to provide that such tort liability shall survive notwithstanding any provision in the contract of carriage requiring suit to be brought within a given period.