**J. B. EFFENSON COMPANY,**
Appellant,

v.

**THREE BAYS CORPORATION, Ltd.,**
Appellee.

**No. 16200.**

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1956.

Arthur Roth, Rassner, Miller & Roth, by Arthur Roth, Miami, Fla., for appellant.

Richard F. Ralph, Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

Diversity jurisdiction was invoked in a civil action upon a charter party executed at Miami, Florida, and dated February 5, 1952, by which the defendant, Three Bays Corporation, Ltd., a Nassau corporation, appellee here, chartered the M/V "Church Bay" to the plaintiff, J. B. Effenson Company, a Florida corporation, appellant here, for two voyages between Puerto Barrios, Guatemala, and Miami. Diversion for one trip to a Mexican port was sought by the plaintiff and permitted by the defendant. The plaintiff requested and the defendant granted an indefinite extension of the charter party. The vessel was used in the banana trade. By paragraph 19 of the charter party it was provided that:

"19. Limitation of Liability.—a) The Owner and the Vessel in all matters arising under this Charter Party shall be entitled to the like provisions and rights and immunities as are contained in Section 3(6), Section 4, and Section 11 of the Carriage of Goods by Sea Act of the United States approved April 16, 1936 [46 U.S.C.A. § 1300 et seq.] The aforesaid provisions (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the Vessel and

throughout the entire time the goods are in the custody of the Owner or Vessel."

In Section 3(6) of the Carriage of Goods by Sea Act it is provided:

"In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered". 46 U.S.C.A. § 1303(6).

In the first count of the plaintiff's complaint, filed in the United States District Court for the Southern District of Florida, it is alleged that on June 20, 1952, the refrigeration of the vessel broke down causing cargo damage of $5,000. In a second count it is stated that the refrigeration again broke down on July 3, 1952, with the result that cargo damage of $9,500 was sustained. The plaintiff averred that the defendant owed it an absolute and non-delegable duty to provide a seaworthy vessel for refrigerated cargo, and that the duty was breached in that the refrigeration broke down of causes known to defendant or of which defendant should have known before the vessel left port.

The defendant took the position that the claim was barred by the provisions herein quoted of the Act referred to in the charter party, 46 U.S.C.A. § 1303 (6), as more than one year had elapsed since the cause of action accrued. The plaintiff urged before the District Court as it urges here that the applicable period of limitation is five years as prescribed by the Florida statute with respect to actions upon written contracts not under seal. F.S.A. § 95.11. This provision, says the plaintiff, must govern as the Carriage of Goods by Sea Act does not apply to the charter party, and any effort to engraft on it the portion of the Act fixing the time within which suit may be brought must fail because of the Florida statutory prohibition against shortening by contract stipulation the limitation periods fixed by the state. The statute says:

"All provisions and stipulations contained in any contract whatever * * * fixing the period of time in which suits may be instituted under any such contract, or upon any matter growing out of the provisions of any such contract, at a period of time less than that provided by the statute of limitations of this state, are hereby declared to be contrary to the public policy of this state, and to be illegal and void. No court in this state shall give effect to any provision or stipulation of the character mentioned in this section." F.S.A. § 95.03.

The plaintiff also urges that if the Carriage of Goods by Sea Act applies it is applicable in its entirety including the duty imposed by the Act on the carrier to exercise diligence to make the ship seaworthy and to make the refrigerating and cooling chambers fit and safe. 46 U.S.C.A. § 1303(1) (a, c). So urging, the plaintiff says that the defendant cannot invoke the provisions of the Act as to limitations because of the breach of duty to make the vessel seaworthy. The Carriage of Goods by Sea Act is not, by its terms, applicable to the charter of vessels. It applies to carriers and shippers, to contracts between them, and to the rights, duties and liabilities existing under the relationship between them. 46 U.S.C.A. § 1302. The parties to the cause before us neither assumed nor intended that their contract would be governed by the Carriage of Goods by Sea Act. They did not undertake to bring themselves under the Act. They stipulated that they should "be entitled to the like provisions and rights and immunities as are contained in" the designated sections of the Act. By this portion of the charter party the owner and the charterer incorporated by reference the statutory provisions referred to with the same effect as would have resulted if the substance of the provisions had been set forth in extenso in the agreement. By the incorporation of the parts of the Act it was agreed that the owner would be discharged from liability for loss of or

damage to cargo unless suit be brought within a year. If this stipulation is valid the plaintiff cannot recover as more than a year had expired between the accrual of the causes of action and the bringing of the suit. If the Florida statutes are controlling the action was brought seasonably and the granting of the motion to dismiss was error.

■ The plaintiff's position is simply stated. It says that there is diversity of citizenship, the amount involved exceeds $3,000, the action is brought in a Federal court sitting in Florida, and requires the application of Florida law, the laws of the forum govern as to limitations, and by the Florida law contractual stipulations shortening limitation periods are void. If this were the usual run of the mill diversity case for the enforcement of a right derived from and existing under state law the question, at the outset, would be whether the determination of the applicable limitation period was controlled, under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, by state law. Such question has been resolved. Whether the question be of substantive or procedural rights, or in a hiatus between the two, it is the state law that governs. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. See also Holderness v. Hamilton Fire Ins. Co. of New York, D.C.S.D.Fla.1944, 54 F.Supp. 145. So too, would we be required to determine the effect to be given to a prohibition against shortening limitation periods by contract under a declaration of public policy made by the legislature of the state in which the court is sitting? Trust Co. of Chicago v. Pennsylvania Railroad Co., 7 Cir., 1950, 183 F.2d 640, 21 A.L.R.2d 238. But do we here have the usual type of a diversity case? Do we look to the statutes of the State and its judicial decisions to supply the principles by which we are to be guided to a decision?

The judicial power of the United States extends "to all Cases, in Law and Equity" arising under the constitution and laws of the United States and "to all Cases of admiralty and maritime Jurisdiction". U.S.Const. Art. III, § 2. It has been said with clarity and brevity,

"The Constitution of the United States provides that the judicial power of the United States shall extend to 'all cases of admiralty and maritime jurisdiction.' This does not mean that every case touching a ship or her affairs must necessarily be heard by a Federal court sitting in admiralty. The common law courts always had jurisdiction of a cause of action against a ship owner in contract or in tort, when he could be reached personally and money damages only were demanded. That right was not excluded by the admiralty grant in the Constitution and the concurrent right also to hear such cases as well as other cases of admiralty jurisdiction was immediately given to the newly constituted Federal judiciary. The jurisdiction of the admiralty and of the common law courts is therefore to a certain extent concurrent. The common law jurisdiction, when concurrent with admiralty jurisdiction, may be exercised by State courts or, within the limitations of the Constitution and of the acts of Congress, by United States District Courts on the common law side.

"Story, in his Commentaries on the Constitution, says of the grant of admiralty jurisdiction:

"'The reasonable interpretation would seem to be that it conferred on the national judiciary the admiralty and maritime jurisdiction, exactly according to the nature and extent and modifications in which it existed in the jurisprudence of the common law. When the jurisdiction was exclusive, it remained so; when it was concurrent, it remained so. Hence the States could have no right to create courts of admiralty as such, or to confer on their own courts the cognizance of such cases as were exclusively cognizable in admiralty

courts. But the States might well retain and exercise the jurisdiction in cases of which the cognizance was formerly concurrent in the courts of common law. The latter class of cases can be no more deemed cases of admiralty and maritime jurisdiction than cases of common law.' " 1 Benedict on Admiralty (6th Ed.) 33, § 20.

The Judicial Code, as revised in 1948, recognizing the concurrent jurisdiction of admiralty and common law, has provided:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C.A. § 1333.

The concurrent jurisdiction was perhaps more definitely stated in the Judiciary Act of 1789, 1 Stat. 77, 28 U.S.C. (1946) § 41(3) by the provision "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it". The 1948 revision did not change the intent of the statute. Doucette v. Vincent, 1 Cir., 1951, 194 F.2d 834.

It was not intended by the framers of the Constitution "to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States." Rodd v. Heartt (The Lottawanna), 21 Wall. 558, 22 L.Ed. 654. It is not to be doubted that a charter party is a maritime contract and that as between the parties to it the Federal District Courts sitting in admiralty have jurisdiction to determine obligations arising from it. The Fifeshire, D.C.E.D. La., 11 F. 743. Here then we have a case of which an admiralty court would have had jurisdiction had such jurisdiction been invoked. The right which the plaintiff seeks to enforce is a maritime right and is to be governed by the maritime law. Such law is that which the Congress has enacted or the Federal courts, sitting in admiralty or in the exercise of their maritime jurisdiction, have declared and would apply. Moore-McCormack Lines, Inc., v. Amirault, 1 Cir., 1953, 202 F.2d 893; Jansson v. Swedish American Line, 1 Cir., 1950, 185 F.2d 212, 30 A.L.R.2d 1385. To hold that a plaintiff, entitled to elect his forum as between a Federal court, sitting in admiralty, and a court of common law, either state or federal, has a right to elect whether the liability of the defendant shall be determined by the maritime law or by the common law standards of the state would defeat the uniformity which the Constitution requires in such cases. Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L. Ed. 1171; Jansson v. Swedish American Line, supra. This is true even though, as in the case before us, jurisdiction is asserted to be on the ground of diversity of citizenship. Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 209, 98 L.Ed. 143. The maritime principles would prevail even though the action were brought in a state court. Jansson v. Swedish American Line, supra. They are "common law remedies" which may be had, where available, but maritime rights which are redressed.

The only case which has been brought to our attention where a court has considered the effect of a state statute declaring void a stipulation in a maritime contract shortening a limitation period is Scheibel v. Agwilines, Inc., 2 Cir., 1946, 156 F.2d 636. There it was held that the Florida statute did not prevent the enforcement of a proviso limiting to one year the time for bringing suit on a ticket for the transportation of a passenger by steamship from Miami, Florida, to New York City. The passenger sustained injuries on the vessel while it was in Florida waters. He claimed he was injured through the negligence of the steamship line. After more than a

year had expired, suit was brought in the state court of New York and removed to the Federal district court by reason of diversity of citizenship. The district court found that there had been a federal preemption of the field by the enactment of 46 U.S.C.A. § 183b making it unlawful for those who transport passengers by sea to provide by rule, contract, regulation or otherwise for a shorter time for bringing suit for loss of life or bodily injury than one year. So finding, the district court held the Florida statute inapplicable. The Second Circuit Court of Appeals agreed that the Congress had not merely "entered" the field but had so preempted it as to preclude any application of the Florida statute. We are asked to say that this decision must be distinguished because there is no Federal statute authorizing like restrictions in charter party agreements. In the Scheibel opinion it is said:

 "That state statutes must yield so that uniformity may prevail in interstate transportation has been recognized by the courts even though there was no federal legislation dealing expressly with suit clause limitations; [citing cases]." 156 F.2d 638.

This language is in point and, dictum though it be, it is sound doctrine and we follow it.

■■ We are now brought to the consideration of the validity and effect of the incorporation into the charter party of the portion of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6), requiring suit to be brought within one year. It is held that in a charter party the parties may contract as they choose. The Westmoreland, 2 Cir., 1936, 86 F.2d 96, cited with approval in The Monarch

of Nassau, 5 Cir., 1946, 155 F.2d 48. In contracting, provisions of the Carriage of Goods by Sea Act may be incorporated even though the Act would not otherwise apply, Waterman S. S. Corp. v. United States S., R. & M. Co., 5 Cir., 1946, 155 F.2d 687, certiorari denied 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656. When so incorporated such provisions may limit the amount which a shipper may recover. A. M. Collins & Co. v. Panama R. Co., 5 Cir., 1952, 197 F.2d 893. The incorporation in a charter party of the provision of the Carriage of Goods by Sea Act fixing the period within which suit must be brought is a valid one. United States v. The South Star, D.C.S.D.N.Y.1953, 115 F.Supp. 102, affirmed 2 Cir., 210 F.2d 44.

■■ If there be any public policy question presented by this appeal, the question is one of the public policy of the United States rather than the State of Florida. The public policy of the United States may be found in the Acts of Congress and such policy so declared may be applied even though the statute is not directly applicable but only made so by being incorporated by reference. The Monarch of Nassau, supra. No public policy is opposed to the incorporation in a charter party of the provisions of the Carriage of Goods by Sea Act, supra, limiting the time for bringing suit. United States v. The South Star, supra.

■ The judgment of the district court must be affirmed. To hold otherwise would defeat that conformity which was intended by the Constitution in maritime causes and which Erie Railroad Co. v. Tompkins, supra, requires, in enforcing state created rights. The other questions briefed and argued but not here considered do not require discussion.

Affirmed.